FILED

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

2012 OCT 25  PM 4:38

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 12-_____ CR12-1048 |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1001: False Statement to a Government Agency; 26 U.S.C. § 7206(1): False Subscription to Tax Return; 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| SYED QAISAR MADAD, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH TWELVE

[18 U.S.C. § 1343]

I.    INTRODUCTORY ALLEGATIONS

1.    At all times pertinent to this Indictment:

      a.    Defendant SYED QAISAR MADAD ("defendant MADAD") was a resident of Diamond Bar, California, within the Central District of California.

RAK/MB:rak



b.    In or about 1993, defendant MADAD formed Technology for Telecommunication and Multimedia, Inc. ("TTM"). Defendant MADAD was the Chief Executive Officer, Chief Financial Officer, and Secretary of TTM, and, together with his wife, defendant MADAD owned all of the shares of TTM.

c.    TTM maintained Bank of America business checking account number xxxxx-x3204 ("TTM Bank of America Account"). Defendant MADAD had sole signature authority over the TTM Bank of America Account.

d.    Beginning in or about 2005, defendant MADAD used TTM for the purpose of investing and managing his own funds and the funds of other investors.    Defendant MADAD operated TTM from his residence in Diamond Bar, California.

II.   THE FRAUDULENT SCHEME

2.    Beginning on a date unknown to the Grand Jury, but no later than in or about November 2005, and continuing until at least on or about March 22, 2011, within the Central District of California and elsewhere, defendant MADAD, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3.    The scheme to defraud operated, in substance, in the following manner and by the following means:

a.    Defendant MADAD would hold himself out as a

successful investor, and would solicit and cause others to
solicit investments into TTM from victim-investors.  Defendant
MADAD represented and caused to be represented to the victim-
investors that defendant MADAD would invest a portion of their
money to achieve consistent, substantial returns, and the
remainder of their money would be safely held and preserved by
TTM.

b.    Defendant MADAD would not, in fact, invest and
preserve the money entrusted to him by victim-investors as he had
promised to do.  Instead, without informing the victim-investors
or obtaining their authorization, defendant MADAD would use the
victim-investor funds to make returns of capital to other victim-
investors; to fund cash disbursements to himself and to his
family; to fund his gambling activities; to pay his own personal
expenses; and to pay his wife's business expenses.

c.    Defendant MADAD would provide false and fraudulent
account statements to the victim-investors which purported to
show gains in their investment accounts.  The purpose of these
false and fraudulent account statements was three-fold: first, to
prevent the victim-investors from discovering that defendant
MADAD was not successfully investing and preserving their funds
as he had promised; second, to persuade the victim-investors to
entrust additional monies to defendant MADAD for investment; and
third, to encourage the victim-investors to recommend investing
with defendant MADAD to other potential investors.

4.   As part of the scheme to defraud and in order to
execute it, defendant MADAD would make and cause to be made the

3

following materially false representations and promises to victim-investors:

   a.   That defendant MADAD's day-trading methodology generated consistent profits;

   b.   That defendant MADAD had not lost money in a single day of trading since November 2006;

   c.   That the monthly account statements that defendant MADAD sent to the victim-investors accurately reflected the true value and performance of each victim-investor's account;

   d.   That defendant MADAD did not trade on margin;

   e.   That defendant MADAD would return any victim-investor's money to the victim-investor when asked by the victim-investor to do so; some victim-investors were told that the money would be returned "upon request"; some victim-investors were told that the money would be returned within twenty-four (24) hours of the investor's request; and some investors were told that the money would be returned within a few days of the victim-investor's request; and

   f.   That defendant MADAD would not take any fees or compensation for managing the invested funds.

   5.   In truth and in fact, as defendant MADAD then well knew:

   a.   Defendant MADAD's day-trading methodology did not generate consistent profits;

   b.   Defendant MADAD had lost money trading on more than one day since November 2006;

   c.   The monthly account statements that defendant

4

1  MADAD sent to the victim-investors did not accurately reflect the

2  true value and performance of each victim-investor's account;

3          d.   Defendant MADAD did trade on margin;

4          e.   Defendant MADAD would not return a victim-

5  investor's money to the victim-investor as he had promised to do

6  when the victim-investor asked for it to be returned and, when he

7  did return money to a victim-investor, the money used to make the

8  payment had come from investments made by other victim-investors;

9          f.   Defendant MADAD withdrew from TTM and took for

10 himself monies from the victim-investors at any time and in any

11 amount defendant MADAD chose.

12     6.   Further to execute the scheme to defraud, defendant

13 MADAD would conceal the following material facts from the victim-

14 investors:

15         a.   Defendant MADAD's trades with the victim-

16 investors' funds often lost money; and

17         b.   Instead of investing the victim-investors' money

18 as promised, defendant MADAD used the victim-investors' money to

19 make returns of capital to other victim-investors; to fund cash

20 disbursements to himself and to his family; to fund his gambling

21 activities; to pay his own personal expenses; and to pay his

22 wife's business expenses.

23     7.   Further to execute the scheme to defraud, defendant

24 MADAD would make and cause to be made materially false and

25 misleading representations and promises to the victim-investors

26 for the purpose of lulling the victim-investors into believing

27 that the money they had entrusted to him was safe and that any

28

delays in returning their money to them upon their request were
only temporary and not due to defendant MADAD's loss of their
money through unsuccessful trades and theft of their money.

III. THE EFFECT OF THE SCHEME TO DEFRAUD

    8.   Through the above-described scheme to defraud,
defendant MADAD induced approximately 75 victim-investors to
entrust approximately $49 million to him to be invested through
TTM.  When the scheme collapsed in or about March 2011 the value
of the victim-investor funds held by TTM was approximately $1
million.

IV. EXECUTIONS OF THE FRAUDULENT SCHEME

    9.   On or about the dates set forth below, within the
Central District of California, and elsewhere, defendant MADAD,
for the purpose of executing and attempting to execute the above-
described scheme to defraud, caused the following items to be
transmitted by means of wire and radio communication in
interstate commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| ONE | 9/11/08 | $100,000 sent by B.A.W. from JP Morgan Chase Bank in New York, New York, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TWO | 10/7/08 | $100,000 sent by G.K. from JP Morgan Chase Bank in New York, New York, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| THREE | 10/23/08 | $200,000 sent by S.I.A. from Bank of Whittier in Whittier, California, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| FOUR | 11/13/08 | $1,000,000 sent by A.O. from Bank of the West in Walnut Creek, California, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| FIVE | 11/25/08 | E-mail re "Trading Account Report" sent by defendant MADAD in Diamond Bar, California, to S.R. in Boston, Massachusetts |
| SIX | 11/26/08 | $2,334,341 sent by A.O. from Bank of the West in Walnut Creek, California, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| SEVEN | 2/9/09 | $90,000 sent by B.A.W. from JP Morgan Chase Bank in New York, New York, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| EIGHT | 4/28/09 | $173,000 sent by by A.O. from Bank of the West in Walnut Creek, California, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| NINE | 5/20/09 | $100,000 sent by by B.A.W. from JP Morgan Chase Bank in New York, New York, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| TEN | 9/4/09 | $100,000 sent by T.Q. from Wells Fargo Bank in San Francisco, California, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| ELEVEN | 3/1/10 | $75,000 sent by T.Q. from JP Morgan Chase Bank in New York, NY, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California |
| TWELVE | 11/4/10 | E-mail re "Trading Activities to September 17, 2010" sent by defendant MADAD in Diamond Bar, California, to S.R. in Boston, Massachusetts |

COUNT THIRTEEN

[18 U.S.C. § 1001(a)(3)]

10.  The Grand Jury repeats and realleges paragraphs one through eight of this Indictment as if fully set forth herein.

11.  On or about July 18, 2012, in Los Angeles County, within the Central District of California, and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the Federal Bureau of Investigation ("FBI"), defendant MADAD knowingly and willfully made and used false writings and documents, knowing said writings and documents to contain the materially false, fictitious and fraudulent statements and entries.  Specifically, defendant MADAD submitted to the FBI documents purporting to be account statements for three UBS accounts held by Technology for Telecommunication and Multimedia, Inc. ("TTM"), in Geneva, Switzerland (the "UBS Geneva Account Statements").  The UBS Geneva Account Statements were materially false, fictitious, and fraudulent in the following respects, among others:

a.  The UBS Geneva Account Statements purported to be statements produced by UBS for accounts held by TTM in Geneva, Switzerland, bearing account numbers 1-230-411689, 0-985-1110578, and 20156-06711.  In truth and in fact, as defendant MADAD then well knew, UBS did not produce these account statements;

b.  The UBS Geneva Account Statements purported to show that, as of April 25, 2011, TTM held accounts at UBS in Geneva, Switzerland, bearing account numbers 1-230-411689; 0-985-1110578; and 20156-06711.  In truth and in fact, as defendant MADAD then well knew, TTM did not hold accounts at UBS in Geneva,

1  Switzerland bearing these account numbers; and

2          c.   The UBS Geneva Account Statements purported to

3  show that, as of April 25, 2011, TTM held cash and equities

4  valued at $30,217,419.00 in account number 1-230-411689; cash and

5  equities valued at $35,760,970.50 in account number 0-985-

6  1110578; and cash valued at $14,326,177.90 in account number

7  20156-06711.  In truth and in fact, as defendant MADAD then well

8  knew, TTM did not hold cash and equities in these amounts in

9  accounts at UBS in Geneva, Switzerland bearing these account

10 numbers.

COUNTS FOURTEEN THROUGH SIXTEEN

[26 U.S.C. § 7206(1)]

12.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant SYED QAISAR MADAD ("defendant MADAD"), a resident of Diamond Bar, California, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for each calendar year identified below, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which return defendant MADAD did not believe to be true as to every material matter, in that, on each such Form 1040, defendant MADAD reported, on line 22, that he had the following amounts of total income, when, as defendant MADAD then well knew and believed, his total income for each of those years was substantially higher than the amount he reported.

| COUNT | DATE | TAX YEAR | REPORTED INCOME AMOUNT |
|---|---|---|---|
| FOURTEEN | 10/14/2008 | 2007 | $3,001,690 |
| FIFTEEN | 10/13/2009 | 2008 | $4,434,554 |
| SIXTEEN | 10/14/2010 | 2009 | $4,951,654 |

11

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); 21 U.S.C. § 853]

[WIRE FRAUD]

13.   The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts One through Twelve above as though fully set forth in their entirety here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853.

14.   Defendant MADAD, if convicted of any of the offenses charged in Counts One through Twelve [18 U.S.C. § 1343] of this Indictment, shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses including, but not limited to:

(1) one 2008 Mercedes Benz C63, vehicle identification number WDDGF77X58F174640;

(2) Defendant MADAD's residence in Diamond Bar, California with Assessor Parcel Number 8713-028-004; and

(3) Real property located in Diamond Bar, California with Assessor Parcel Number 8713-028-003.

b.   A sum of money equal to the total amount of proceeds derived from each such offense for which defendant MADAD is convicted.

1    15.   Pursuant to Title 21, United States Code, Section

2  853(p), as incorporated by Title 28, United States Code, Section

3  2461(c), defendant MADAD if so convicted, shall forfeit

4  substitute property, up to the total value of the property

5  described in paragraph 14 above, if, by any act or omission of

6  defendant MADAD, the property described in paragraph 14, or any

7  portion thereof, (a) cannot be located upon the exercise of due

8  diligence; (b) has been transferred or sold to, or deposited

9  with, a third party; (c) has been placed beyond the jurisdiction

10  of the court; (d) has been substantially diminished in value; or

11  (e) has been commingled with other property that cannot be

12  divided without difficulty.

13                            A TRUE BILL

14                            /s/

15                            _____
                              Foreperson

16  ANDRÉ BIROTTE JR.
    United States Attorney
17
18  *[signature]*
    ROBERT E. DUGDALE
19  Assistant United States Attorney
    Chief, Criminal Division
20
21  RICHARD E. ROBINSON
    Assistant United States Attorney
22  Chief, Major Frauds Section

23  RANEE A. KATZENSTEIN
    Assistant United States Attorney
24  Deputy Chief, Major Frauds Section

25  MIEKE BIESHEUVEL
    Assistant United States Attorney
26  Major Frauds Section

27

28

                              13