1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   RANEE A. KATZENSTEIN (Cal. State Bar No.: 187111)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5  JENNIFER M. RESNIK (Cal. State Bar No.: 233634)
   Assistant United States Attorney
6  Asset Forfeiture Section
        1100/1400 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-2432/6595
        Facsimile: (213) 894-6269/7177
9       E-mail: ranee.katzenstein@usdoj.gov
                jennifer.resnik@usdoj.gov
10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

12                 UNITED STATES DISTRICT COURT

13           FOR THE CENTRAL DISTRICT OF CALIFORNIA

14  UNITED STATES OF AMERICA,        )  CR No. 12-1048-PA
                                     )
15                 Plaintiff,        )  PLEA AGREEMENT FOR DEFENDANT
                                     )  SYED QAISAR MADAD
16            v.                     )
                                     )
17  SYED QAISAR MADAD,               )
                                     )
18                 Defendant.        )
                                     )
19  _____ )

20

21       1.   This constitutes the plea agreement between SYED QAISAR

22  MADAD ("defendant") and the United States Attorney's Office for

23  the Central District of California ("the USAO") in the

24  above-captioned case.  This agreement is limited to the USAO and

25  cannot bind any other federal, state, local, or foreign

26  prosecuting, enforcement, administrative, or regulatory

27  authorities.

28  ///

1
                      <u>DEFENDANT'S OBLIGATIONS</u>

2
    2.  Defendant agrees to:

3
        a) At the earliest opportunity requested by the USAO

4
and provided by the Court, appear and plead guilty to counts nine

5
and sixteen of the indictment in <u>United States v. Syed Qaisar</u>

6
<u>Madad</u>, CR No. 12-1048-PA, which charge defendant with,

7
respectively, wire fraud, in violation of Title 18, United States

8
Code, Section 1343, and false subscription to a tax return, in

9
violation of Title 26, United States Code, Section 7206(1).

10
        b) Not contest facts agreed to in this agreement.

11
        c) Abide by all agreements regarding sentencing

12
contained in this agreement.

13
        d) Appear for all court appearances, surrender as

14
ordered for service of sentence, obey all conditions of any bond,

15
and obey any other ongoing court order in this matter.

16
        e) Not commit any crime; however, offenses that would

17
be excluded for sentencing purposes under United States

18
Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines")

19
§ 4A1.2(c) are not within the scope of this agreement.

20
        f) Be truthful at all times with Pretrial Services, the

21
United States Probation Office, and the Court.

22
        g) Pay the applicable special assessments at or before

23
the time of sentencing unless defendant lacks the ability to pay

24
and prior to sentencing submits a completed financial statement

25
on a form to be provided by the USAO.

26
        h) Agree to and not oppose the imposition of the

27
following conditions of probation or supervised release:

28

1    Defendant shall not engage, as whole or partial owner,

2    employee or otherwise, in any business involving

3    investment services, investment advice, and/or the

4    management of the money and/or assets of any other

5    person, business or entity, without the express

6    approval of the Probation Officer prior to engagement

7    in such ownership, employment or other involvement in

8    such business.  Further, the defendant shall provide

9    the Probation Officer with access to any and all

10   business records, client lists and other records

11   pertaining to the operation of any business owned, in

12   whole or in part, by the defendant, as directed by the

13   Probation Officer.

14   3.  Defendant understands that defendant will be required to

15   pay full restitution to the victims of the offenses to which

16   defendant is pleading guilty.  Defendant agrees that, in return

17   for the USAO's compliance with its obligations under this

18   agreement, the Court may order restitution to persons other than

19   the victims of the offenses to which defendant is pleading guilty

20   and in amounts greater than those alleged in the counts to which

21   defendant is pleading guilty.  In particular, defendant agrees

22   that the Court may order restitution to any victim of any of the

23   following for any losses suffered by that victim as a result:

24   (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in

25   connection with the offenses to which defendant is pleading

26   guilty; and (b) any counts dismissed pursuant to this agreement

27   as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3,

28   in connection with those counts.  The parties currently believe

that the applicable amount of restitution is approximately

$31,756,625, but recognize and agree that this amount could

change based on facts that come to the attention of the parties

prior to sentencing.

4.   Defendant further agrees:

a) That the following property (collectively, the

"Forfeitable Property") shall be forfeited to the United States

of America:

i.  One 2008 Mercedes-Benz C63, VIN

WDDGF77X58F174640;

ii.  Defendant's residence in Diamond Bar,

California with the following legal description: PARCEL 1: LOT

119, OF TRACT NO. 60578, IN THE CITY OF DIAMOND BAR, COUNTY OF

LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 785

PAGES 1 TO 25 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY

RECORDER OF SAID COUNTY. EXCEPT THEREFROM OIL, GAS, MINERALS AND

HYDROCARBON BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF

SURFACE ENTRY AS RESERVED IN INSTRUMENT OF RECORDS.  PARCEL 2: A

NON-EXCLUSIVE EASEMENT TO BE USED IN COMMON WITH OTHERS FOR

INGRESS AND EGRESS OVER ALL THOSE AREAS SHOWN UPON THE MAP OF

SAID TRACT NO. 30578, AS PRIVATE STREET, SAID EASEMENT TO BE

APPURTENANT TO AND FOR BENEFIT OF THE LOT DESCRIBED ABOVE IN

PARCEL 1.  EXCEPT THEREFROM ANY PORTION WHICH FALLS WITHIN THE

LINES OF PARCEL 1 ABOVE DESCRIBED.  Assessor's Parcel No.

8713-028-004;

iii.  Defendant's real property in Diamond Bar,

California with the following legal description: PARCEL 1: LOT

118 OF TRACT NO. 30578, IN THE CITY OF LOS ANGELES, COUNTY OF LOS

1  ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 785,

2  PAGES 1 TO 25, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY

3  RECORDER OF SAID COUNTY.  RESERVING UNTO THE GRANTOR EASEMENTS AS

4  RESERVED IN SECTIONS 1 AND 2 OF ARTICLE VI OF THE DECLARATION OF

5  RESTRICTIONS RECORDED MAY 22, 1969 IN BOOK M-3218, PAGE 32,

6  OFFICIAL RECORDS, TOGETHER WITH THE RIGHT TO GRANT OR DEDICATE TO

7  OTHERS WITHOUT LIMITATION LIKE OR SIMILAR EASEMENT.  EXCEPTING

8  THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND

9  MINERAL NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN OR

10  THEREUNDER OR PRODUCIBLE THEREFROM, AS RESERVED IN THE DEED FROM

11  TRANSAMERICA DEVELOPMENT COMPANY, RECORDED MARCH 29, 1968, IN

12  BOOK D-3955, PAGE 185, OFFICIAL RECORDS OF SAID COUNTY AND AS

13  MODIFIED BY QUITCLAIM DEED RECORDED ON MAY 8, 1969 IN BOOK

14  D-4363, PAGE 643, OFFICIAL RECORDS OF SAID COUNTY, WHICH,

15  RELINQUISHED ALL RIGHTS TO THE USE OF THE SURFACE AND SUBSURFACE

16  TO A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND.  PARCEL 2:

17  A NON-EXCLUSIVE EASEMENT TO BE USED IN COMMON WITH OTHERS FOR

18  INGRESS AND EGRESS OVER ALL THOSE AREAS SHOWN UPON THE MAP OF

19  SAID TRACT NO. 30578, AS "PRIVATE STREETS", AND OVER ALL THOSE

20  AREAS SHOWN UPON THE MAP OF TRACT NO. 30289 RECORDED IN BOOK 743,

21  PAGES 42 TO 50, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY

22  RECORDER OF SAID COUNTY AS "PRIVATE STREETS", SAID EASEMENT TO BE

23  APPURTENANT TO AND FOR THE BENEFIT OF THE LOT DESCRIBED ABOVE IN

24  PARCEL 1.  EXCEPTING THEREFROM ANY PORTION WHICH FALLS WITHIN THE

25  LINES PARCEL 1 ABOVE DESCRIBED.  Assessor's Parcel No.

26  8713-028-003;

27           iv. 89 items of assorted personal property seized

28  from defendant's residence on October 30, 2012, described more

particularly in Exhibit A attached hereto;

v.   21 items of assorted jewelry seized from defendant's residence on October 30, 2012, described more particularly in Exhibit A;

vi.   9 items of assorted jewelry seized on December 17, 2012, described more particularly in Exhibit A;

vii. 38 pieces of assorted jewelry seized on December 20, 2012, from Nicole-Stanton, LLC described more particularly in Exhibit A;

viii. 2 pure silk handmade rugs and 2 pure wool handmade rugs described more particularly in Exhibit A; and

ix.   $293,979.23 in bank funds seized on October 30, 2012, from a Charles Schwab Bank account in the name of Faisal Hai Rajput.

b) That the Forfeitable Property shall, at the sole election of the United States of America, be criminally forfeited or civilly forfeited, administratively or judicially, pursuant to 18 U.S.C. §§ 981, 982 or otherwise; and that the Forfeitable Property constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343.

c) To take whatever steps are necessary to pass to the United States of America clear title to the Forfeitable Property including, without limitation, the execution of one or more consent judgments of forfeiture in a form and manner acceptable to the USAO, and completion of any other legal documents required for the transfer of title to the United States of America;

d) To the entry as part of defendant's guilty plea of a personal money judgment of forfeiture against defendant in the

amount of $31,756,625.00, which sum defendant admits was derived from proceeds traceable to violations of 18 U.S.C. § 1343. Defendant understands that the money judgment of forfeiture is part of defendant's sentence, and is separate from any fines or restitution that may be imposed by the Court;

e) Not to contest the forfeiture of the Forfeitable Property in any judicial or administrative proceeding.  If defendant has submitted a statement of interest or claim in any administrative forfeiture proceeding involving the Forfeitable Property (or any portion thereof), defendant hereby withdraws any such statement of interest or claim, waives defendant's right to any further notice relative to the administrative forfeiture proceeding and understands, acknowledges and agrees that all of defendant's right, title and interest in and to the Forfeitable Property subject to defendant's statement of interest or claim shall, should the United States of America elect to do so, be administratively forfeited to the United States of America without any further notice to defendant;

f) To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the Forfeitable Property.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any

failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea;

g) Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property or claim that reasonable cause to seize the Forfeitable Property was lacking;

h) To prevent the disbursement of the Forfeitable Property if such disbursements are within defendant's direct or indirect control;

i) That forfeiture of the Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, or any other penalty the Court may impose, except that any forfeited property remitted to any victim(s) listed in the restitution order shall reduce the amount owed pursuant to the restitution order;

j) To waive all constitutional and statutory challenges to forfeiture of the Forfeitable Property on any grounds, including any statute of limitations and the Excessive Fines Clause;

k)  To abandon, relinquish, and waive, and by executing this agreement, defendant hereby does abandon, relinquish and waive any and all rights in the Forfeitable Property in favor of the United States.

l) To disclose to law enforcement officials, at a date and time to be set by the USAO, the whereabouts of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties or assets of any kind

derived from, acquired as a result of or used to facilitate the commission of defendant's illegal activities, and to forfeit all defendant's right, title, and interest in and to such items; and

m)   To undertake all reasonable efforts to cause his spouse, Meher Fatima Tabatabai, and where applicable, other members of his family, to execute one or more consent judgments of forfeiture or agreements not to contest the administrative forfeiture of the Forfeitable Property in a form and manner acceptable to the USAO and to complete any other legal documents required for the transfer of title to the United States.  Said consent judgments of forfeiture and agreements not to contest the administrative forfeiture of the Forfeitable Property shall be delivered to the government contemporaneously with an executed copy of this plea agreement.  Attached hereto as Exhibits B-E are the Consent Judgments of Forfeiture and Agreements to be executed by defendant's family members.

5.   Defendant agrees to cooperate with the Internal Revenue Service in the determination of defendant's tax liability for 2006, 2007, 2008 and 2009 and in the preparation and execution of the closing agreements described below. Defendant agrees that:

a) Defendant will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years to be covered by the closing agreements; will make his best efforts to pay at or before sentencing all additional taxes and all penalties and interest due in accordance with the closing agreements; and will promptly pay all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing

as a result of any computational error.

b) Defendant will sign closing agreements with the Internal Revenue Service before sentencing, permitting the Internal Revenue Service to assess and collect the total sum of approximately $5,011,998 ($215,694; $930,223; $1,210,149; $1,715,154; and $940,778 for the defendant's tax years 2006, 2007, 2008, 2009, and 2010 respectively), plus the civil fraud penalty for each year and statutory interest as provided by law. Defendant admits that defendant is liable for this fraud penalty for 2006, 2007, 2008 and 2009.

c) Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

<u>THE USAO'S OBLIGATIONS</u>

6.   The USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing contained in this agreement.

c) At the time of sentencing, move to dismiss the remaining counts of the indictment.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up

to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e) Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 32 or higher. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

f) Recommend to the Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice, that the forfeited assets be used to compensate victims of the underlying offenses, either through restoration or remission, as appropriate.

<u>NATURE OF THE OFFENSES</u>

7. Defendant understands that for defendant to be guilty of the crime charged in count nine, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true:

First, the defendant participated in a scheme to defraud as to material matters;

Second, the defendant used, or caused to be used, the interstate wires to carry out or attempt to carry out an essential part of the scheme; and

Third, the defendant acted with the intent to defraud.

8.   Defendant understands that for defendant to be guilty of the crime charged in count sixteen, that is, false subscription to a tax return, in violation of Title 26, United States Code, Section 7206(1), the following must be true:

First, the defendant made and signed a tax return for the year 2009 that he knew contained false or incorrect information as to a material matter;

Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

Third, in filing the false tax return, the defendant acted willfully.

In order to prove that the defendant acted "willfully," the government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him, and the defendant intentionally and voluntarily violated the duty.

<u>PENALTIES AND RESTITUTION</u>

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: a 20-year period of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: a 3-year period of imprisonment; a 1-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the

12

offense, whichever is greatest; and a mandatory special
assessment of $100.

11.   Defendant understands, therefore, that the total
maximum sentence for both of the offenses to which defendant is
pleading guilty is: a 23-year period of imprisonment; a 3-year
period of supervised release; a fine of $500,000 or twice the
gross gain or gross loss resulting from the offenses, whichever
is greatest; and a mandatory special assessment of $200.

12.   Defendant understands and agrees that the Court: (a)
may order defendant to pay restitution in the form of any
additional taxes, interest, and penalties that defendant owes to
the United States based upon the count of conviction and any
relevant conduct; and (b) must order defendant to pay the costs
of prosecution of count sixteen, which may be in addition to the
statutory maximum fine stated above.

13.   Defendant understands that defendant will be required
to pay full restitution to the victims of the offenses to which
defendant is pleading guilty.  Defendant agrees that, in return
for the USAO's compliance with its obligations under this
agreement, the Court may order restitution to persons other than
the victims of the offenses to which defendant is pleading guilty
and in amounts greater than those alleged in the counts to which
defendant is pleading guilty.  In particular, defendant agrees
that the Court may order restitution to any victim of any of the
following for any losses suffered by that victim as a result: (a)
any relevant conduct, as defined in U.S.S.G. § 1B1.3, in
connection with the offenses to which defendant is pleading
guilty; and (b) any counts dismissed pursuant to this agreement

as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3,
in connection with those counts.  The parties currently believe
that the applicable amount of restitution is approximately
$31,756,625, but recognize and agree that this amount could
change based on facts that come to the attention of the parties
prior to sentencing.

14.  Defendant understands that supervised release is a
period of time following imprisonment during which defendant will
be subject to various restrictions and requirements.  Defendant
understands that if defendant violates one or more of the
conditions of any supervised release imposed, defendant may be
returned to prison for all or part of the term of supervised
release authorized by statute for the offense that resulted in
the term of supervised release, which could result in defendant
serving a total term of imprisonment greater than the statutory
maximum stated above.

15.  Defendant understands that, by pleading guilty,
defendant may be giving up valuable government benefits and
valuable civic rights, such as the right to vote, the right to
possess a firearm, the right to hold office, and the right to
serve on a jury.  Defendant understands that once the court
accepts defendant's guilty plea, it will be a federal felony for
defendant to possess a firearm or ammunition.  Defendant
understands that the conviction in this case may also subject
defendant to various other collateral consequences, including but
not limited to revocation of probation, parole, or supervised
release in another case and suspension or revocation of a
professional license.  Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

16.   Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.   The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.   Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

<u>FACTUAL BASIS</u>

17.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

*Statement of Facts*

In or about 1993, defendant MADAD formed Technology for Telecommunication and Multimedia, Inc. ("TTM"). Defendant MADAD was the Chief Executive Officer, Chief Financial Officer, and Secretary of TTM, and, together with his wife, defendant MADAD owned all of the shares of TTM.   TTM maintained Bank of America business checking account number xxxxx-x3204 ("TTM Bank of

America Account"). Defendant MADAD had sole signature authority over the TTM Bank of America Account.

Beginning in or about 2005, defendant MADAD used TTM for the purpose of investing and managing his own funds and the funds of other investors. Defendant MADAD operated TTM from his residence in Diamond Bar, California.

Defendant MADAD held himself out as a successful investor who had not lost money in a single day of trading except one day in November 2006 and who used a day-trading technique that was consistently profitable. Defendant MADAD told other investors that he did not and would not trade on margin, and that he would return any funds received from other investors, together with the profits that defendant MADAD would make for the investors, upon their request. Defendant MADAD also told investors that he would not take any fees or compensation for managing the invested funds.

Defendant MADAD received money from investors, who believed that defendant MADAD would invest their money in a way that would generate consistent profits. After receiving their money, defendant MADAD provided monthly account statements to the investors which always showed gains in their investment accounts.

In fact, as defendant MADAD knew, defendant had and did trade on margin; his trading activity was not consistently profitable; the account balances shown on the monthly account statements were false; and defendant MADAD used investor funds to pay for his own personal expenses and the expenses of his family, and to make cash distributions to himself and members of his family.

Between October 2005 and March 2011, defendant MADAD received over $49 million from investors. All of the money received from investors was wired or deposited into the TTM Bank of America Account and all trading by TTM was conducted through Charles Schwab brokerage accounts. None of the money defendant MADAD received from investors was sent to any account maintained by UBS in Switzerland. Among the monies defendant MADAD received from investors was $100,000 which was wired on May 20, 2009 by B.A.W. from JP Morgan Chase Bank in New York, New York, through the Federal Reserve Bank of New York processing office in East Rutherford, New Jersey, to the TTM Bank of America Account in Placentia, California. Between 2006 and 2011, defendant MADAD used over $15.5 million of the funds received from investors to, among other uses, purchase real estate, jewelry, and vehicles; to pay credit card balances; and to fund cash disbursements to himself and family members. Defendant MADAD returned approximately $17.7 million to investors. The remainder of the funds entrusted to defendant MADAD by the investors was lost in unsuccessful trading.

On or about October 14, 2010, defendant MADAD signed and submitted to the Internal Revenue Service a United States

Individual Income Tax Return, Form 1040, for tax year 2009 on which he reported, on line 22, that he had total income of $4,951,654. At the time that defendant MADAD signed the return and submitted it to the IRS he knew that he had additional income for tax year 2009 of approximately $4,896,973 and knew that he had a legal duty to disclose this additional income to the IRS.

## SENTENCING FACTORS

18. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

19. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:              7   (USSG § 2B1.1(a)(1))

Loss more than $20 million    +22   (USSG § 2B1.1(b)(1)(I))
but not more than $50 million

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 2 are met. Subject to paragraph 32 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in

writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed, except for the following: (a) the government reserves the right to seek the application of upward adjustments for multiple victims, use of sophisticated means, and obstruction of justice pursuant to USSG § 2B1.1(b)(2)(B) USSG § 2B1.1(b)(10)(C), and USSG § 3C1.1, respectively, and defendant reserves the right to object to the application of these adjustments; and (b) defendant reserves the right to seek a downward departure based on his age, pursuant to USSG § 5H1.1, and the government reserves the right to object to such a departure.

20.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

22.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to be represented by counsel – and if necessary have the court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

23.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

24.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the

court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $31,756,625; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and the condition prohibiting defendant from engaging, as whole or partial owner, employee or otherwise, in any business involving investment services, investment advice, and/or the management of the money and/or assets of any other person, business or entity, without the express prior approval of the Probation Officer, and requiring the defendant to provide the Probation Officer with access to any and all business records, client lists and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer.

25.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $31,756,625

## RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27. Defendant agrees that if either count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on the remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on the remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.

Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

28.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

29.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

30.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

31.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

32.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the

23

1   Court's Sentencing Guidelines calculations and determination of

2   sentence, and (c) argue on appeal and collateral review that the

3   Court's Sentencing Guidelines calculations and the sentence it

4   chooses to impose are not error, although each party agrees to

5   maintain its view that the calculations in paragraph 19 are

6   consistent with the facts of this case.  While this paragraph

7   permits both the USAO and defendant to submit full and complete

8   factual information to the United States Probation Office and the

9   Court, even if that factual information may be viewed as

10   inconsistent with the facts agreed to in this agreement, this

11   paragraph does not affect defendant's and the USAO's obligations

12   not to contest the facts agreed to in this agreement.

13      33.  Defendant understands that even if the Court ignores

14   any sentencing recommendation, finds facts or reaches conclusions

15   different from those agreed to, and/or imposes any sentence up to

16   the maximum established by statute, defendant cannot, for that

17   reason, withdraw defendant's guilty pleas, and defendant will

18   remain bound to fulfill all defendant's obligations under this

19   agreement.  Defendant understands that no one -- not the

20   prosecutor, defendant's attorney, or the Court -- can make a

21   binding prediction or promise regarding the sentence defendant

22   will receive, except that it will be within the statutory

23   maximum.

NO ADDITIONAL AGREEMENTS

25      34.  Defendant understands that, except as set forth herein,

26   there are no promises, understandings, or agreements between the

27   USAO and defendant or defendant's attorney, and that no

28   additional promise, understanding, or agreement may be entered

into unless in a writing signed by all parties or on the record
in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35.  The parties agree that this agreement will be
considered part of the record of defendant's guilty plea hearing
as if the entire agreement had been read into the record of the
proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANDRÉ BIROTTE JR.
United States Attorney


_____          2/22/13
RANEE A. KATZENSTEIN                       Date
JENNIFER M. RESNIK
Assistant United States Attorneys


_____          2/22/2013
SYED QAISAR MADAD                          Date
Defendant


_____          2/22/2013
MARK J. WERKSMAN                           Date
Attorney for Defendant
Syed Qaisar Madad

25

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        _2/22/2013_
SYED QAISAR MADAD                        Date
Defendant

26

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am SYED QAISAR MADAD's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

MARK J. WERKSMAN
Attorney for Defendant
SYED QAISAR MADAD

Date 2/22/13

27