FILED
CLERK, U.S. DISTRICT COURT

JUN 23 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SYED QAISAR MADAD )  Case No: 2:16-CV-02519-PA
 )  12-CR-01048-PA
 )
 )
Petitioner/Defendant )
 )
V )  RESPONSE TO GOVERNMENT'S
 )  OPPOSITION TO DEFENDANT'S MOTION
 )  UNDER 28 USC 2255 TO VACATE,
 )  SET ASIDE OR CORRECT SENTENCE
UNITED STATES OF AMERICA )
 )
 )  FILING OF COMPLAINT AGAINST
Respondent/Plaintiff )  23 CONSPIRATORS
 )
 )  FILING OF VARIOUS MOTIONS AND
 )  REQUESTS FOR ORDERS
 )
 )
 )

Your Honor:

Defendant requests that a Hearing should be Granted, to his Motion under 28 USC 2255 to vacate, set aside or correct sentence, despite Government's Opposition. This is particularly important now, because of the Jury's Verdict in the Superior Court of Los Angeles, on May 16, 2016 in the Civil Case # BC 457773 , in which Government's major witness Akbar Omar suffered a serious setback because of his credibility.

Despite of the fact that I could not be present at the Trial due to my confinement, and Akbar Omar used my Indictment Case # 12-CR-01048-PA & Change of Plea to bolster his Civil Case, and almost none of the Motions & Documents I have filed in the US District Court , and the information I have submitted challenging my conviction since August 18, 2015 were available to the Jury, the members of the Jury delivered their verdict of financial award to Akbar Omar of only $ 3,737,638.16 i.e just a little over 1/3rd of his claim or as per my Monthly Report of March 31, 2011 to Investors's figure of $ 9,125,435.90 . ( EXHIBITS # 4.25 & 4.26 )

The Monthly Report figure of $ 9,125,435.90 was based upon Akbar Omar's representations & the presumption that he was telling the truth. Following the visit of two (2) individuals on Feb 9, 2010 to my Home/Office

(1)

who posed themselves as the IRS Agents & were looking for Akbar Omar. I tried, unsuccessfully, to ascertain the sources, origin, ownership & legitimacy of funds deposited by Akbar Omar in the Investment Pool ( EXHIBITS # 4.27 & 4.28) , but I have been discredited & the Monthly Reports to Investors were dismissed because of lies & cover-up by him & other Conspirators.

The Jury Verdict in the Civil Case, disallowing the award of $ 5,387,797.74 out of $ 9,125,435.90 total, has brought the issue of my two (2) business transactions with Akbar Omar, on behalf of TTM, in the amounts of $ 12,109,233.08 in December, 2007 and $ 18,572,350.00 in October, 2008 ( Total $ 30,681,583.08 ), and the missing UBS A/C, upfront again. These two (2) business transactions occurred around the same years or time span the Jury disallowed financial awards to Akbar Omar.

The Jury was deadlocked on awarding $ 3,334,341.98 to Akbar Omar, brought in by his father-in-law ABDUL HAMID PATEL of Wembley, United Kingdom (UK), whom he had identified, just as a business acquaintance from New York, during his Bankruptcies in October, 1987. ( Motion under 28 USC 2255 EXHIBIT # 4.14- VOLUME 4 ).

Akbar Omar had married Rukhsana Omar (Patel) in 1979, in London, England (UK).

These funds were brought by a single check by ABDUL HAMID PATEL in October, 2008 and transferred to the Investment Pool in November, 2008. The account used to facilitate the transfer to the Investment Pool was established by Akbar Omar in October, 2008 & was closed down in four (4) months following the transfer.

The Defendant prays to the Court that a Hearing should be Granted to his Motion under 28 USC 2255, as the 35 Real Victims, Defendant's family & the Government, all have vested interest in it.

Thank you, Your Honor.

Yours truly,                                              June   14,   2016

Syed Qaisar Madad

## TABLE OF CONTENTS

Response to Government's Opposition          Page: 1
EXHIBIT #4.24 (REVISED)                      Page:13
EXHIBIT #4.25                                Page:18
EXHIBIT #4.26                                Page:22
EXHIBIT #4.27                                Page:40
EXHIBIT #4.28                                Page:44
EXHIBIT #4.29                                Page:47
EXHIBIT #4.30                                Page:54
(PROPOSED) Order #1                          Page:57-1
(PROPOSED) Order #2                          Page:57-2
(PROPOSED) Order #3                          Page:58
(PROPOSED) Order #4                          Page:59
(PROPOSED) Orde #5                           Page:60
Motion to acquire Transcript                 Page:61
Motion 1 To enter Civil Case Jury Verdict    Page:62-1
Motion 2  To adjust restitution             Page:62-2

RESPONSE TO GOVERNMENT'S OPPOSITION
AND ADDITIONAL MATERIAL
IN SUPPORT OF MOTION UNDER 28 USC 2255 AND THE LEGAL BRIEF

Your Honor: Truth is eternal & everlasting. Lies & False information or statements have a short life and they fade away with time.

1.  GOVERNMENT'S POSITION IS BASED UPON
    LIES, COVER-UP AND CONSPIRACY BY WITNESSES

I respectfully differ with the learned AUSA Rene Katzenstein on her presentation of Government's position in 23 page submission which lists 14 Federal Cases as Authorities & for Citation purposes, and also four (4) different statutes. A mere statement of what is in a statute, does not really establish that someone has violated them & most of the Citations are not applicable as this is a case where the witnesses have lied to the FBI, lied to the US Attorney's Office on substantive & material information, they covered-up & conspired and the Grand Jury never learned the truth or the entire story.

I have a great admiration & respect for our Courts, the Justice System, and the US Department of Justice. I respect AUSA Ranee Katzenstein's knowledge & opinion.

2.  OUR JUSTICE SYSTEM IS BASED UPON TRUTH

Truth is the foundation of our Justice System & that is also what the Grand Juries & Courts look for.

Your Honor: I would cite only one (1) Federal Case to make my point & that is also the crux of my philosophical, intellectual and legal reasoning:

        UNITED STATES |SUPREME COURT
        183 LED2D 574, US  UNITED STATES v ALVAREZ
        Page: 589

(1)

" Perjured Testimony" is at war with justice
because it can cause a court render a
" judgment not resting on truth. In re Michael,
326 U.S. 224, 227, 66 S.Ct. 78, 90 L.Ed.30(1945).
Perjury undermines the function and province
of the Law and threatens the integrity of
judgments that are the basis of the legal system."

In the instance of this case, the FBI, the US Attorney's Office
presumed that the witnes|les were being truthful & honest,
and nothing was being heldback. However, the witnesses actually
lied & less than honest & the Grand Jury never knew the truth,
and all the records & documents, analysis or results presented
to the members of the Grand Jury were defective & tainted.

3.    CIVIL CASE JURY VERDICT

The Government could not have chosen the worst witness Akbar
Omar for their arguement & reasoning. First of all he belongs
to Memon Clan that control Hawala & Hundi network of money &
assets movement in Pakistan, Afghanistan, Middle East & Africa
which also serves as a money pipeline for ter||orists, extremists
and religious fanatics in that part of the world, which the
United States & the West are trying to shutdown.

After five (5) years of harassing & dragging my older daughter
Mahvish Z. Madad in litigation, Akbar Omar dropped her from the
Law Suit on or about April 14, 2016. Both Akbar Omar & Rukhsana
Omar knew that my daughter had been living away from home since,
2001 because of her education. She only came home in the Summer
of 2005 to get married & moved out again in August, 2005 to live
with her husband and attend the Law School at |he Pepperdine
University , even before the Investment Pool was started. Upon
the completion of her Law Degree, she passed her Bar Examination
in her first attempt. As a proud father, I appointed her the
General Counsel for TTM, without asking her, while she was
full time at a Law Firm. That was all the fault & her
involvement in the Investment Pool. The price of my show of love
& pride in my daughter's accomplishments— 5 years of litigation
by Akbar Omar on lies & false accusations, anxiety, stress,
& financial drain for a newly married couple. I am proud that

(2)

she chose to work as an Attorney for the State Department and serve this nation I admire. The United States has always helped Pakistan , even putting the lives of men & women of our Armed Forces/ at risk to fight terrorism & make that region safe, while the corrupt Pakistani Heads of State have done little to help the United States or for the safety & security of ordinary citizens of my Mother Land.

Akbar Omar lied & made false incriminating statements about my wife, and the Jury had put an end to it, after over five (5) years of litigation, stress & worries for a family, already broke & oppressed & torn apart. Please refer to the EXHIBIT #4.30 the General Verdict Form, signed by the Presiding Juror.

Akbar Omar & Rukhsana Omar and all their lying & conspiring friends knew that my wife Meher F. Tabatabai ran a very busy and successful Medical Practice. Leaving home one morning & returning between 2:00 AM- 3:00 AM the next morning. She had no time to get involved in the Investment Pool operation. Her only contact with Akbar Omar or Zubaida Noor Khan, or Sajid R Ahmed, or Abdul Rashid Khan or Arif Mansuri who came to our home / my Office , Library, and Trading Room regularly, was to invite them to join us for breakfast/ brunch between 10:30 AM - 11:30 AM every morning, including any of my staff member in my Office. We treated everyone with warmth & hospitality & what we got in return was completely wiped out by these crooks & thieves who had become our friends, but we did not know then.

My wife had been constantly harassed by friends of Akbar Omar, so she stopped going to Doctor's Lounges for rest, even when tired & exhausted. Over $ 2 Million in legal costs, our savings and retirement accounts completely wiped out at her age of 64 and mine of 69, after very long & successful professional careers i.e over 40 years for me and 35+ years for her & heavily under debt:

o   I have not been able to pay my Attorney Todd Cleary for a long time & have an outstanding balance of over $ 100,000.

- o   My wife is behind on her legal bill by over $ 500,000.

- o   TTM had been without a legal representation since Sept 9, 2013 , as I could not afford an Attorney.

- o   And as the Court is aware, the Government paid for my Direct Appeal, as could not afford an Attorney.

As it is clear from the Jury Verdict, the Jury delivered a decision in favor of my wife, on all Counts, as    he    lied    & misrepresented.

As far in my case, the members of the Jury awarded just over 1/3rd of his Claim of $ 3,737,638.16 or as per my Monthly Report of March 31, 2011 to Investors figure of $ 9,125,435.90. Please refer to EXHIBITS #4.25 , #4.26 Summary Table , and #4.29 General Verdict Form.

This is despite of the fact that I could not attend the Civil Trial at the Superior Court of California, due to my confinement, and Akbar Omar used my Indictment Case # 12-CR-01048-PA & my Change of Plea to bolster his Civil Case, and almost none of my submissions to the US District Court since August 18, 2015, after I discovered from the complete FBI Interviews on Forms FD-302 on 07/27/2015 for the first time that witnesses had lied, falsified facts & withheld material & substantive information from the FBI, the US Attorney's Office, and the Grand Jury never heard the whole truth or the whole story. Everyone presumed that all the witnesses were honest & truthful.

The Jury in the Civil Trial also, never saw my Motion under 28 USC 2255, its Legal Brief, or the Supporting Document & the accompanying EXHIBITS.

- a) The members of the Jury rejected 11 of the 23 Claims or Special Interrogatories of Akbar Omar;

- b) The Jury was deadlocked on 3 other Claims, cutting down the amount by 50% to reach a Verdict

- c) In the end $ 5,387,797.74 was cutdown from his Claim.

- d) Akbar Omar had represented & lied to me that all the monies that he invested in the Investment Pool was his and he was authorized to invest, despite my verification

efforts after the visit of two (2) individuals on
02/09/2010 to my home/office, looking for him (EXHIBITS
#4.27 & 4.28 ). But I was discredited by the Government
and his lies were accepted as the truth;

e)   Akbar  Omar  lied  &  misrepresented  in  his  sworn
     Declaration also, signed by him on 03/21/2011 & filed
     with  the  Superior  Court  of  California  with  his
     Complaint;

f)   He also lied & misrepresented to the FBI during his
     Interview with FBI Special Agent Brian Schnese;

g)   The Defendant discovered an Ancient sworn Declaration
     of his, signed by him on October 20, 1987, in connection
     with his Bankruptcy Case# LA-86-20463-LF which was also
     false;

h)   The Defendant also discovered that he filed falsified
     Statement of All Liabilities of Debtor showing Khalid
     B. Ahmed/ Parveen N. Ahmed as Creditors;

i)   In his Ancient sworn Declaration signed by Akbar Omar
     on October 20, 1987, he declared that ABDUL HAMID PATEL
     was a business acquaintance from New York, but in April,
     2016 during the Civil Trial he stated that ABDUL HAMID
     PATEL was his father-in-law,    and   he   claimed   $
     3,334,341.98 be awarded to him. The 12 members of Jury
     were deadlocked.

Please refer to EXHIBITS # 4.14 & 4.15 under VOLUME 4 of
Motion under 28 USC 2255 filed with the Court on 4/12/2016
for select pieces of these Ancient Records.

Akbar Omar's and his friends lies & false incriminations
have destroyed my family, our name & reputation. And the
Grand Jury process in my Federal Case was rigged. Akbar
Omar's Ancient Bankruptcy Records become relevant & a good
reference of his character. Therefore, I am filing a
request for a Court Order for the Government to acquire
these falsified & fraudulent records, and be made part of
material in support of my Motion under 28 USC 2255).

4.   GOVERNMENT'S ARGUMENT OF
     PROCEDURAL DEFAULT

I understand that the learned AUSA is very knowledgeable about
the Law. My counter argument is that the truth never goes stale
or become irrelevant. It should always be allowed to enter a
Court of Law & given its proper place, whenever it is
discovered. Lies & falsity of information, and cover-up should
not steal its place, and prevent the truth being heard or
presented.

5.  INVESTMENT POOL TRADING, RESEARCH
    ANALYSTS WORK, REPORTS & DATABASE
    WAS SHARED WITH ALL VISITORS/INVESTORS

    ───────────────────────────────────────

    Atleast thirteen (13) different Investors/ Visitors came to
    learn, observe, conduct research, or see how the Analysts did
    stock screening, selection, & technical analysis of stocks listed
    under the various Industry Sectors. The names of these Visitors/
    Investors are documented under Motion under 28 USC 2255 VOLUME
    2- Sub-Sections 3.8.3 & 3.8.4, and filing with the Court of May
    21, 2016.


    I shared the Reports generated by my eight (8) Analysts & their
    Research work, openly, with all who visited my Office/ Library/
    Trading Room :


    1)  The Analysts Research & Sector by Sector stock Selections
        were posted on YAHOO—FINANCE site under User ID: TTMMASTER
        and all Visitors/ Investors were provided the PIN NUMBER.

        This posting included Stock Selection & Portfolio of
        atleast 20|¦ best performing stocks, picked Sector by Sector
        by TTM's Analysts;

    2)  Stock Trend Report generated by Analyst Winnie O Campo,
        Daily, every morning at 6:0Q¦s AM;

    3)  World Major Market Trend Report compiled by a 2nd Analyst,
        Daily, every morning at 6:00AM;

    4)  Sector by Sector Mid-day best performing stocks & Sectors
        Report, Daily, by Eric Paxman Director/ Incharge of al|fl|
        TTM's Analysts;

    5)  Access to a Research Computer Station, connected to a
        Server.

        The Server contained TTM's Proprietary SQL Base, Stock
        Selection & screening, Trading & Investment Software
        covering the entire DOW & NASDAQ Markets with over 6,500
        listed stocks; and finally

    6)  The Visitor/Investors could just sit around my Trading
        Computer & watch me trade and observe the Trading Computer
        large 22" Flat Display Screen.

    Atleast three (3) out of Five (5) regular Visitors/ Investors
    to my Office/ Library/ Trading Room i.e. Akbar Omar, Zubaida

Noor Khan, Arif Z. Mansuri, plus Syed Imran Ali who visited my Office on several occasions , and my Ex-Employee Ashvin Domadia who visited me every hour, have blatantly lied , covered-up and withheld information. Two (2) regular Visitors/Investors of my Office i.e Sajid B. Ahmed & Abdul Rashid Khan has remained silent.

In this submission, I am including an even more detailed version of EXHIBIT # 4.24 filed with the US District Court on 06/09/2016 the EXHIBIT # 4.24 (REVISED) containing information on Visitors Seating in my Office/Library around my Trading Computer, a more detailed SCREEN DISPLAY content information of my Trading Computer & FBI's Account Analysis ( Exhibit H of AUSA Ranee Katzenstein's Declaration filed with the Court of 06/14/2013 for my Sentencing Hearing ) super-imposed with VISITS & SCREEN DISPLAY of Trading Computer.

My Trading Computer Display Screen displayed a multitude of information, at all times during the Market Hours:

- o   Account Balances
- o   Buying Power
- o   Total Investment Pool Balance
- o   Profit & Loss figures breakdown
- o   Total Profit & Loss Investment Pool
- o   Money Invested in the Market
- o   Money Invested in individual stock holdings
- o   Profit & Loss figures on individual trades
- o   Stockholdings
- o   Trade Execution Alert Messages, including stocks bought or sold, execution price, volume & time when trade was executed.

- o   Intra-day Chart of stock being monitored
- o   Daily Chart of stock being monitored
- o   Stock Monitor List
- o   Chart overlays- DOW JONES or NASDAQ, or S&P 500

The Trading Computer updated & provided live information on all of the above & other variables, and parameters not listed above, automatically. Charles Schwab's Street SmartPro Platform/ Software monitoring interval was 1 minute. On Intra-day Charts, a trader could choose 2 minutes, or 3 minutes, or 5 minutes or 10 minutes interval. Two (2) frequent & regular Investors/ Visitors: Arif Z. Mansuri & abdul Rashid Khan who used the TradeStation Professional Trading Platform/ Software had the ability to monitor stock-price or market movement on TICK basis i.e. an interval even shorter than 1 minute.

The cover-up & withholding of information about VISITS, and of the above information by these seven (7) individuals, with some of the five (5) frequent & regular Visitors lying & misrepresenting tainted 19 of the 22 Exhibits presented to the Court for my Sentencing Hearing & seen by the members of the Grand Jury for their indictment verdict. These Exhibits were prepared, looked at, and interpreted, under the color of suspicion & with the presumption that the witnesses were honest & truthful, and what was not disclosed did not exist. While infact, they were less than honest, lying in conspiracy, covering-up & holding back the truth, and injected falsified incriminating information.

This led to the conclusions that: I lied, misrepresented, ran a " Ponzie Scheme", no business transactions took place between Akbar Omar & TIM, the UBS Account never existed, the Monthly Reports to investors were false, and I used investors funds to pay for my personal expenses.

Had the FBI & the US Attorney's Office or the Grand Jury known about the Visits & Investors/ Visitors to my Office or the fact that Akbar Omar visited my Office 3-4 times/ week as far back as mid-year 2008 & had acquired a Transponder in Feb, 2009 to visit my Office anytime, un-restricted they would have realized that Akbar Omar would have discovered back in 2008 just after 1 or 2 visits, it was a fraud & a Ponzie Scheme, if the UBS Account did not exist. He could not have joined the Investment Pool in November, 2008, by any logic based upon their Account Analysis provided to the US Attorney's Office.

In addition, I sent to every Investor a detailed Monthly Report including to those who visited me regularly. This report my trading philosophy or stategy . This report confirmed & what the Visitors/ Investors saw on my Trading Computer Display Screen, day by day , for the entire month:

i)   I flatly deny that I ever exceeded 10-15% of the Invested Capital ( The Investment )in the Market. All those who gave interviews to FBI , including Akbar Omar or Bashir Waraich or Syed Imran Ali, or others who testified deliberately withheld from disclosure that beginning the end of year 2007, and the entire year 2008, and atleast till mid-year 2009 was one of the most turbulent & volatile years of the US Market in over 50 years history. The DOW JONES fell over 50 % from over 14,000 to about 6,900.

This strategy was necessary to protect & preserve the Capital.

2)   I deny ever trading a stock , if not backed by Research & Technical Analysis either by my Analysts or by me.

3)   I flatly deny conducting Margin Trading. The Margin Trading involves trading with funds over and above your own Capital

by borrowing:

| | | |
|---|---|---|
| 100% Margin | Means | 100% of your Capital is invested. Same amount borrowed. |
| 200% Margin | Means | 100% of your Capital is invested. 200% of your Capital is borrowed. |
| No Margin Fully Invested | Means | 100% of your Capital is invested. |
| Investment Pool Strategy | | 10 - 15 % of Capital was invested. |
| | | Even after leveraging only 40-60% Capital Investment exposed to risk. |

I have provided a more detailed & illustrative description in my Motion under 28 USC 2255 VOLUME-2 pages: 150-152.


The Monthly Reports to Investors were very detailed & provided the overall & the bottomline results, day by day, displayed on the Trading Computer Screen which was infront of the five (5) regular visitors during the entire Market Hours of 06:30AM-01:00 PM Los Angeles Time. Four (4) Visitor i.e Sajid B. Ahmed, Abdul Rashid Khan, Arif Mansuri & Zubaida Noor Khan, almost came daily ( 5 days/week ) between Mar, 2010- Oct, 2010 and Akbar Omar came 3-4 times/ week from mid-year 2008.


The commentary provided by the Government about the various features & details of Investment Pool's Monthly Report on pages: 6-9 is accurate, however their analysis & interpretation is totally inaccurate & misguided:

i)   Government does not know about the security issues with CyberTrader Pro Software. Even though it was a more advanced software & had more features, Charles Schwab adopted Street SmartPro Software, also by CyberTrader but was very secure.

ii)  Perhaps the Government still believes in the lies, misrepresentations & cover-up by Akbar Omar & other

witnesses whose testimony they have seen;

iii) The Government is unaware that their main witness Akbar Omar has been discredited by the 12-Member Jury in the Civil Case. Most of his financial Claim ( 60% Approx) has been rejected about which he had filed a sworn Declaration in the Superior Court of California & made false statements to FBI in his interview on June 24, 2011;

iv) Akbar Omar withheld information from the FBI & perhaps the US Attorney's Office about the content of the Trading Computer Display Screen.

He & other witnesses who visited my Office/Library/ Trading Room perhaps believe that no Typical Screen Display Format of any of the Trading A/C used for the Investment Pool exist, to expose their lies.

v) The Government honestly believes that presence of other Visitors/ Investors in my Office/ Library/ Trading Room is my creation & is a fiction, because of lies & cover-up by so many individuals.

The Cover-up about business-transactions, and deposited funds also involve Khalid B. Ahmed, the 2nd main identified in my Motion under 28 USC 2255 filed on April 12, 2016 :

vi) The Investment Pool was started at the urging of Khalid B. Ahmed. It was a verbal Agreement & understanding that all funds deposited by him will booked as a 50/50 Investment Capital Share for both him & me. Funds credited for my share will be treated a loan.

All funds borrowed by him or his wife for gaming will be treated separately or adjusted in their Investment Account, if they decide so.

This verbal Agreement concluded in Jan, 2010, when I made payment of $500,000 by adjustment of their & our Investment Accounts.

vii) Two (2) Business Transactions occurred with Akbar Omar on behalf of TTM, in December 2007 & October, 2008, totalling $30.6 Million , which funds were deposited by Akbar Omar in the missing UBS A/C, which I believe he had taken control of sometimes between December 17, 2007 - May 4, 2011 & Hawala Network is involved, alongwith some of my Ex-employees. His son-in-law Faraaz Hashemi's computer files were erased, upon upon pickup on March 25, 2011.

The non-disclosure & cover-up of these Business Dealings & Agreement which were conducted in trust & friendship affected the FBI's Account Analysis & IRS's Assessment ( Exhibits H & V attached to the Declaration of AUSA Ranee Katzenstein, filed with the Court on 06/14/2013 for my Sentencing Hearing ) and erroneous conclusions & interpretations were derived about my level of investment in the Pool, the size of the Investment Pool, and designation of my withdrawals as spending of other Investor's money, thus classification as income & a personal Tax Liability. The Grand Jury saw in the same light, as was seen by the FBI, the IRS & the US Attorney's Office because of the cover-up.

This was compounded by the lies & cover-up of visits & what the regular Visitors/ Investors saw on my Trading Computer Screen, and the UBS A/C disappearing without a trace. All these acts were planned, involved my staff members, other Conspirators, whether having knowledge or no knowledge as to what the truth & facts were, just supporting their relatives & friends with their interviews & testimony.

It is only after the fact that I started to learn both about OMARS, their Memon Clan, Ahmeds, their influence & political connections abroad.

viii)   While I openly shared & provided access to Visitors/ Investors, shared the resources of TTM, those who came regularly & frequently, were not honest about their motives & took advantage.

Akbar Omar requested a Transponder to the Gated Community un-restricted, anytime. Among my staff of eight (8) Analysts & circle of friends at the time, he was the only one ever issued that device . He gave the Transponder to his son Attorney Shazad Omar to burglarize & break-into our house to steal records. A mis-use of trust & a privilege.

6.   CONCLUSION

I pray to the Court that the Government's Opposition to my Motion under 28 USC 2255 & to granting of a hearing be rejected. Their position remains grounded on the interviews & testimonies of witnesses who have lied & covered-up. Their main witness Akbar Omar has been discredited by the 12-Members Jury in the Civil Case, in the Superior Court of California, Los Angeles. The Jury rejected almost 60% of his financial claim.

Furthermore, it is my contention, that witnesses lied to to the FBI, the US Attorney's Office, and the Grand Jury never heard the truth or the full story. As stated in my Motion under 28 USC 2255 and my Legal Brief, I am seeking full & complete exoneration from all my indictment charges and return/ restoration of all my property & assets that forfeited.

In support of my position & Motion under 28 USC 2255 I am submitting a number of requests for Court Orders which pertain to Physical Evidence, Records & new Motions to transfer records & Jury Verdict of the Civil Case, which concluded last month on May 16,2016, from the Superior Court of California, to this Court. I pray the Court for the granting of these orders & motions.

```
(                                                              )
(  ,   THE RESPONSE IS SUBMITTED WITH A DEEP SENSE OF          )
(      GRATITUDE TO THE US DEPARTMENT OF JUSTICE, THE SUPREME  )
(      COURT OF THE UNITED STATES & OUR LAW MAKERS- THE US     )
(      CONGRESS & THE SENATE FOR THE PRIVILEGE AND ACCESS      )
(      TO AN ELECTRONIC LAW LIBRARY EQUIPPED WITH TYPING,      )
(      COPYING, AND LEGAL RESEARCH FACILITY.                   )
(                                                              )
```

EXHIBIT #4.24 ( REVISED)


EXHIBIT #4.24 (REVISED) is an update of EXHIBIT #4.24
filed with the US District Court on 06/09/2016.

Similar to EXHIBIT #4.24 it combines the OFFICE/
LIBRARY - LAYOUT of the Trading Room where the
Investment Pool was traded, and the TYPICAL DISPLAY
SCREEN FORMAT of the Trading Computer from the LEGAL
BRIEF with the Account Analysis by FBI filed on
06/14/2013 as Exhibit H with the Declaration of AUSA
Ranel Katzenstein for the Sentencing Hearing.

EXHIBIT #4.24 (REVISED) contains more information
i.e. Visit information , seating location of 5
regular Visitors/Investors around the Trading
Computer super-imposed. The Contents information of
DISPLAY SCREEN windows 1,7,8 & 12 identified.

More detailed DISPLAY SCREEN content information
under Supporting Document- VOLUME 2 Sub-section
3.8.2 pages: 135 - 142 or consult Charles Schwab
Street SmartPro Scftware Program Operating Manual
for the Users.

(13)



LAYOUT

| 1 | Trading Computer/Modem/Router | 2 | Research Computer |
|---|---|---|---|
| 3 | Observer/Trader/Visitor Chair | 4 | Guest Chair |
| 5 | Observer/Trader/Visitor Sofas | 6 | Office Desk |
| 7 | Printer/Scanner/Copier | 8 | Fax/Printer/Copier |
| 9 | Wall Units | 10 | Floor Cabinets |
| 11 | Bookshelf/Wall Units | 12 | Office Chair Swival |
| 13 | Cable TV | 14 | Table |

○ ○  Private/Confidential Records & Documents Storage

⬭  Stools

33 of 518

6 of 12

(14)

TRADING COMPUTER (i)

Charles Schwab's Street SmartPro Trading Platform

Typical Display Screen Format

Used for Investment Pool Account



22" Flat Display Screen

DISPLAYED
INFORMATION

o Account Balance
o Buying Power
o Profit & Loss
o Money Invested
o Profit & Loss by
   individual trades
o Stockholdings

o Trade Execution
   Alerts
o No of Stocks
   Bought or Sold
o Time when trade
   was executed

o Price at which
   Trade executed

DISPLAYED
INFORMATION

o Buying Power/
   Account Balance
o Profit & Loss
o Money Invested
   in the Market

o Total Investment
   Pool Balance
o Total Profit &
   Loss

| | | | |
|---|---|---|---|
| 1 | Trading Status Bar | 2 | Intraday Chart Window | 3 | Daily Chart Window |
| 4 | Stock Portfolio Window | 5 | Dynamic Ticker Window | 6 | Trading Box Window |
| 7 | Account Display & Execution Box Window | 8 | Order Execution Alert Messages Window | 9 | Best & Worst Performing Stocks of NASDAQ & NYSE of the day |
| 10 | Market & Company News & Press Releases | 11 | Chat Box Window | 12 | Computer Calculator (Not part of Schwab Platform) |

34 of 518

7 of 12

(15)



Difference Monthly Report Balances & Column 3

AKBAR OMAR- VISITS

Typical Display Screen Format

1    Trading Status Bar
7    Account Display & Execution
     Box Window
12   Computer Calculator

P1 refer to Diagram on page 7 of 12

Monthly Report Balances

NO UBS A/C

1 & 7

12 UBS A/C

279 of 518

(16)

11 of 12



Typical Display Screen Format

| 1 | Trading Status Bar |
| 7 | Account Display & Execution Box Window |
| 12 | Computer Calculator |
| P1 | refer to Diagram on page 7 of 12 |

EXHIBIT #4.25


My assignment of Deposits made by Akbar Omar to
his various Accounts in the Investment Pool based
upon his representations & on the presumtion that
he was telling the truth. It includes my letter
to Akbar Omar dated March 10, 2010 requesting him
to verify the dates & amounts, following the
visit of 2 individuals on 02/09/2010 , to my Home/
Office, posing as the IRS Agents & looking for him.

Akbar Omar used this letter as Exhibit 2 , of his
3rd Amended Complaint Case No: BC 457773 Superior
Court of Los Angeles, CA. filed on 11/05/2012.,
alongwith my Indictment Case# 12-CR-01048-PA dated
10/25/2012 as Exhibit 12.

(18)



## Technology for Telecommunication and Multimedia, Inc.
### Your Link to the Future

Dr Akbar Omar,
West Covina, CA.

March 30, 2010

### Subject: CONFIDENTIAL

: Reference to our previous letter dated March 09, 2010 .

The attached Table was compiled following the visit of Internal Revenue Service (IRS) agents investigating , your business/es & activities . From November 13, 2008 to Feb 09, 2010 TTM had recieved 31 deposits / wire transfers from you, totaling $ 10,625,435.90.

Please verify the dates & amounts for accuracy and advise back ASAP ,

Yours truly
Syed Q. Mudari, CEO

*Akbar bhai:*

*Can we get together*
*today between 2:00 ~ 2:30*
*P.m.*

*Thanks*

*Qasim*

(19)

PX 2

TRANSACTIONS HISTORY

Dr. Akbar Omar's Accounts & Assignments

Rev:0
02/09/2010

CONFIDENTIAL

| | | |
|---|---|---|
| 11/13/2008 | $ 1,000,000.00 | AR/RO |
| 11/26/2008 | $ 2,534,341.98 | AR/RO |
| 12/10/2008 | $ 653,985.52 | SS |
| | $ 273,404.73 | SS |
| | $ 27,667.18 | AYO |
| | $ 16,745.19 | SHO |
| | $ 16,420.16 | SHO |
| 12/11/2008 | $ 449,077.94 | AR/RO |
| | $ 1,250,000.00 | EP |
| 01/27/2009 | $ 394,617.49 | SMP |
| | $ 123,000.00 | ELV |
| 02/11/2009 | $ 73,000.00 | EP |
| | $ 170,000.00 | SS |
| 02/12/2009 | $ 110,619.17 | EP |
| 02/13/2009 | $ 24,200.00 | AYO |
| | $ 19,700.00 | SHO |
| | $ 18,600.00 | SAO |
| 03/05/2009 | $ 493,000.00 | AO/RO |
| 03/06/2009 | $ 110,000.00 | EP |
| 03/30/2009 | $ 400,000.00 | AO/RO |

(20)

TRANSACTIONS HISTORY

Dr. Akbar Omar's Accounts & Assignments

Rev:0
02/09/2010

CONFIDENTIAL

| 04/28/2009 | $ 173,000.00 | AO/RO |
| | $ 170,000.00 | SS |
| | $ 140,000.00 | SMP |
| 04/29/2009 | $ 300,000.00 | EP |
| 11/11/2009 | $ 246,000.00 | AO/RO |
| 11/24/2009 | $ 545,000.00 | AKM |
| 12/01/2009 | $ 228,000.00 | AO/RO |
| 12/10/2009 | $ 200,000.00 | AO/RO |
| 12/10/2009 | $ 153,157.64 | ELV |
| 12/17/2009 | $ 180,000.00 | AO/RO |
| 01/25/2010 | $ 330,000.00 | AO/RO |

| Total | $ 10,625,435.90 | 31 Transactions |

EXHIBIT #4.26

Summary Table of Jury Verdict Damages on pages: 3 & 4
of Defendant Syed Madad's Motion for Remit|itur
filed with the Superior Court of California, on
05/19/2016 ( Case No: BC 457773 ).

1  Todd J. Cleary, # 144358
   The Law Offices of Todd J. Cleary
2  10720 McCune Avenue
3  Los Angeles, CA  90034
   (310) 559-8118
4
   Attorneys for Defendant
5  Syed Q. Madad

6

7

8              **SUPERIOR COURT OF CALIFRORNIA,**

9        **COUNTY OF LOS ANGELES - CENTRAL DISTRICT**

10

11  AKBAR OMAR, an individual,              Case No. BC457773

12              Plaintiff,

13                                          *[Assigned to Hon. Ruth Ann Kwan, Dept. 72]*
       v.
14                                          DEFENDANT SYED MADAD'S MOTION
    SYED QAISER MADAD, an individual;       FOR REMITTITUR; MEMORANDUM IN
15  MEHER F. TAGATABAI, an individual;      SUPPORT OF REMITTITUR AND IN
    TECHNOLOGY            FOR               OPPOSITION TO PLAINTIFFS
16  TELECOMMUNICATION      AND              ANTICIPATED MOTION FOR ADDITUR
    MULTIMEDIA,   INC.,   a   California
17  corporation;  and  DOES  1  through 30,
    inclusive,                             **Hearing: May 19, 2016**
18                                         **Time: 10:00 a.m.**
              Defendants.                  **Place: Dept. 72**
19                                         **Judge: Ruth Ann Kwan**

20

21

22  Comes  now  Defendant  Syed  Qaiser  Madad  and  submits  this  Motion  for  Remittitur  and

23  Memorandum of Points and Authorities in Support of Remittitur and in Opposition to Plaintiff

24  Akbar Omar's anticipated Motion for Additur.

25                          5/19/16  Default motion

26                          1653314973

27

28              Defendant Syed Madad's Motion for Remittitur

                              (23)

## I.    RELEVANT FACTS

The Jury in this case rendered a verdict in a General Verdict Form against the Defendant Syed Q. Madad only for damages in the sum of $3,737,638.16.  The Jury's answers to Special Interrogatories 1 through 23 as to whether the Plaintiff had met its Burden of Proof in establishing the Plaintiff as the Owner of specific funds invested in the TTM Investment Pool came to a higher number, <u>but those questions only go to standing, not to the ultimate jury deliberations on liability, damages, defenses and an award which the Jury fully expressed reflected its assessment of the damages which it felt as a group should be awarded at the conclusion of a lengthy deliberative process.</u>.  That process, like the form of the General Verdict, should be respected.

Discussion with the Jury after the verdict was read revealed the following facts:

After completion of the presentation of evidence and closing arguments in this matter, the Jury deliberated for 2 days before one of the Jurors (Juror No. 4) vehemently objected to going back into the Jury Room after the afternoon break, stating that he would rather spend time in a jail cell than have to work with the other Jurors in this case.   This led to his replacement with an Alternate Juror and re-deliberation of the matter by the newly constituted jury.

After deliberation, the jurors were deadlocked 6 to 6 on the issues presented in several of the Special Interrogatories. Because no further progress was being made on those issues, the Jurors agreed to arrive in the jury deliberation room and as part of their deliberations at the General Verdict damages number by pooling the amounts represented by the Special Interrogatories in dispute, dividing them in half and then voting whether to accept that halved amount for damage purposes. Where the Jury voted to accept the halved amount by a 9 to 3 ballot, the answer to the

Defendant Syed Madad's Motion for Remittitur

(24)

Special Interrogatory was deemed to be yes and ½ of the amount set forth in such Special Interrogatory was included in the damage verdict as part of the deliberative process followed by the Jury. No instruction from the Court, no legal direction, precluded that deliberative process and resulting decision.

The Jury decision can be seen in the Summary Table set out below which explains how the Jury came to the exact damage figure set forth in the General Verdict:

## SUMMARY TABLE OF JURY VERDICT DAMAGES

Akbar Omar v. Syed Q. Madad
Summary of Damages Awarded by Jury

| Special Int. No. | Vote | Initial Vote | Amount of Damages in Interrogatory | Amount Awarded in Verdict | Final Vote | Count |
|---|---|---|---|---|---|---|
| 1 | ?? | 6 to 6 | $3,334,341.98 | $1,667,170.99 | Y | 9 to 3 |
| 2 | Y | 11 to 1 | $ 36,120.16 | $ 36,120.16 | Y | 11 to 1 |
| 3 | Y | 11 to 1 | $ 35,345.19 | $ 35,345.19 | Y | 11 to 1 |
| 4 | Y | 10 to 2 | $ 51,767.18 | $ 51,767.18 | Y | 10 to 2 |
| 5 | N | 11 to 1 | $ 273,404.73 | $-0- | N | 11 to 1 |
| 6 | N | 11 to 1 | $ 653,985.00 | $-0- | N | 11 to 1 |
| 7 | Y | 11 to 1 | $ 449,077.00 | $ 449,077.00 | Y | 11 to 1 |
| 8 | ?? | 6 to 6 | $1,250,000.00 | $ 625,000.00 | Y | 9 to 3 |
| 9 | Y | 11 to 1 | $ 398,612.00 | $ -0- | N | 11 to 1 |
| 10 | N | 12 to 0 | $ 123,000.00 | $ -0- | N | 12 to 0 |
| 11 | N | 9 to 3 | $ 71,000.00 | $ -0- | N | 9 to 3 |
| 12 | N | 9 to 3 | $ 170,000.00 | $ -0- | N | 9 to 3 |
| 13 | ?? | 6 to 6 | $ 110,618.27 | $ -0- | N | 9 to 3 |
| 14 | Y | 12 to 0 | $ 493,000.00 | $ 493,000.00 | | 12 to 0 |
| 15 | N | 12 to 0 | $ 110,000.00 | $ -0- | N | 12 to 0 |
| 16 | Y | 12 to 0 | $ 400,000.00 | $ 400,000.00 | Y | 12 to 0 |
| 17 | N | 9 to 3 | $ 140,000.00 | $ -0- - | N | 9 to 3 |
| 18 | N | 9 to 3 | $ 170,000.00 | $ -0- | N | 9 to 3 |
| 19 | Y | 12 to 0 | $ 173,000.00 | $ 173,000.00 | Y | 12 to 0 |
| 20 | ?? | 6 to 6 | $ 300,000.00 | $ 150,000.00 | Y | 9 to 3 |

| 21 | Y | 10 to 2 | $ 153,157.64 | $ 153,157.64 | Y | 10 to 2 |
| 22 | Y | 12 to 0 | $ 545,000.00 | $ -0- | N | 12 to 0 |
| 23 | Y | 10 to 2 | $ 1,184,000.00 | $1,184,000.00 | Y | 10 to 2 |

| | |
|---|---|
| Total Claim | $10,625,429.15 |
| Less Returned Money | $ 1,680,000.00 |
| Max Possible Claim | $ 8,945,429.15 |

| | |
|---|---|
| Jury Awarded Damages | $ 5,417,638.16 |
| Less Returned Money | $ 1,680,000.00 |
| Jury Verdict | $3,737,638.16 |

According to members of the Jury they were deadlocked 6 to 6 on Special Interrogatories Nos. 1, 8 and 20 and were not making any progress on deliberation with respect to those Special Interrogatories. In order to break the deadlock on these claims only, the Jury decided to cut the damages for each of these 3 claims in half for purposes of the General Verdict Form damage award and revote on each of the claims. This resulted in a 9 to 3 vote in favor of each of the three Special Interrogatories, Nos. 1, 8 and 20.

As can be seen in the Summary Table, using this explanation, the Amount of Damages is exactly calculated to be $3,737,638.16 and agrees with the Damages awarded in the General Verdict

## II.     STANDARD FOR GRANTING A REMITTITUR OR ADDITUR

Remittitur and additur are both governed by the same operable law. The Code of Civil Procedure provides that after a trial by jury, the Court may order the reduction (remittitur) or

increase to (additur) the damages. (See, CCP §662.5.) An order for remittitur or additur is permissible in any case where an order granting a new trial as to the issue of damages would be warranted. (Id.)

A new trial shall be granted if the Court is convinced from the entire record that the jury clearly should have reached a different verdict or decision. Code Civ. Proc. § 657. Further, if one or more of the aforementioned grounds applies, the Court has discretion to grant a new trial limited to the issue of damages or, alternatively, "issue a conditional order granting the new trial unless the party against whom the verdict has been rendered consents to the addition of damages in an amount the court in its independent judgment determines from the evidence to be fair and reasonable," an additur. Code Civ. Proc. § 662.5 (a)(1).

It is the duty of the Court to grant a new trial whenever the evidence on which the decision rests is insufficient to justify the decision. *Bray v. Rosen* (1959) 167 Cal.App.2d 680. Granting a new trial on the issue of damages is proper when the jury awards inadequate damages based on the evidence. Code Civ. Proc. § 662.5(1). A new trial shall be granted if the Court is convinced from the entire record that the jury clearly should have reached a different verdict or decision. Code Civ. Proc. § 657.

III.   **GROUNDS FOR ADDITURE DO NOT ECXIST, AND THE COURT SHOULD NOT SUBSTITUTE ITS JUDGMENT FOR THAT OF THE JURY.**

The trial judge may not substitute its judgment for that of the jury unless it appears from the record that the jury's verdict was improper. [*Bigboy v. County of San Diego* (1984) 154 Cal.App.3d 397, 406.] Rather, the court must consider the proper weight to be accorded to the

evidence and then decide whether, in its opinion, there is sufficient credible evidence to support the verdict. [*Dominguez*, supra 212 Cal.App.3d at 215.]

A reviewing court must uphold an award of damages whenever possible and all presumptions are in favor of the judgment. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 61.) Directly relevant to the issue presented, damages awarded by the jury in a verdict for the plaintiff need not fulfill specific numerical quotas. (*Miller v. San Diego Gas & Elec. Co.* (1963) 212 Cal.App.2d 555, 561.) To suggest otherwise is contrary to California law.

A trial court may deny a motion for new trial and may refuse to reassess damages in an action when it is apparent that the jury resolved conflicting evidence in making its award of damages. (*Torres v. Los Angeles* (1962) 58 Cal. 2d 35, 53-54.) In addition, a verdict must not be disturbed unless it "is so out of line with reason that it shocks the conscience and necessarily implies that the verdict must have been the result of passion and prejudice." (*Id.* at p. 53.) There is no evidence that this verdict was based on passion, prejudice, or any bias. Far from it, this jury worked hard to bring in an agreed General Verdict. It deliberated properly, it overcame obstacles, and it generated a damages award which the jury fully embraced as a result of that deliberative process.

As a rule, quotient verdicts constitute jury misconduct. (*Chronakis v. Windsor* (1993) 14 Cal.App.4th 1058, 1064 [explaining a quotient verdict, where jurors agree to be bound by an average of their views, is improper].) Although these verdicts are wrong, there is a temporal element that must be proven and is missing here. Thus, Plaintiff can only show the quotient verdict was improper if he can prove the jurors agreed, **prior to deliberations**, to be bound by the averages of their individual damages determination. (See, CACI 5009 (2016); Cal. Prac. Guide Civ. Trials

Defendant Syed Madad's Motion for Remittitur

(28)

& Ev. (The Rutter Group 2015) Ch. 15-F.)  That did not occur here.  A jury may properly use an average sum or other quotient as the basis for further discussion and balloting on the damages amount, if the jury did not agree prior to deliberations to be bound by that average. (See, *Balkwill v. City of Stockton* (1942) 50 Cal.App.2d 661, 672; *Bardessono v. Michels* (1970) 3 Cal.3d 780, 794-95.) [Emphases added] See also, *Iwekaogu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 819, stating: "It is not misconduct for jurors to use an average as a basis for further consideration and deliberation. (*Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1647, 35 Cal.Rptr.2d 246.)

There is evidence here that the Jury deliberated on each of the Special Interrogatories without prior agreement to be bound by a quotient damage amount.  The Jury was successful in reaching a deciding vote on 20 of the 23 Special Interrogatories and only sought to redeliberate on the 3 Special Interrogatories for which there was a 6 to 6 deadlock amongst the Jurors.  A compromise was then reached through fair and lawful deliberations.  Thus there was no prior agreement regarding the damages verdict.  Accordingly, this is not a prohibited quotient or averaging verdict, but a permissible award which came out of a deliberative process.

The Jury had a question for the court asking what it means to be the sole owner of the funds.  This is material evidence that the Jury was concerned about Special Interrogatory No. 1 in which these words appear and that it wanted clarification from the court so that the Jury could continue its deliberation with a clear understanding of its task.  It is apparent that the Jury was engaged in consideration and deliberation of the damages implied by the answer to Special Interrogatory No. 1.

In addition, there is no evidence that individual juror's damage estimates were used in the damage calculations, rather the evidence is that damages were cut in half for all of the deadlocked

Special Interrogatories and then the panel deliberated and re-voted on each of the deadlocked Special Interrogatories. This was a group decision reached after substantial deliberation by the Jury on the issues set forth in the Special Interrogatory and is not grounds for a new trial. It was not a prohibited quotient or averaging process, but one wholly permissible in the Jury room to resolve matters among themselves.

## IV. DEFENDANT MADAD IS ENTITLED TO A REMITTITUR AS TO THE HAMID PATEL FUNDS REFERENCED IN SPECIAL INTERROGATORY NO. 1

Defendant Syed Q. Madad is entitled to a Remittitur in that the Court erred in refusing to instruct the Jury upon the request of Defendant Madad that Probate Code §5301 controlled the issue of who owns funds deposited into a Joint Tenancy Account which impacts $1,667,170.99 of the Jury's award.

California Probate Code §5301 reads as follows:

"(a) An account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each, unless there is clear and convincing evidence of a different intent.
(b) If a party makes an excess withdrawal from an account, the other parties to the account shall have an ownership interest in the excess withdrawal in proportion to the net contributions of each to the amount on deposit in the account immediately following the excess withdrawal, unless there is clear and convincing evidence of a contrary agreement between the parties.
(c) Only a living party, or a conservator, guardian, or agent acting on behalf of a living party, shall be permitted to make a claim to recover the living party's ownership interest in an excess withdrawal, pursuant to subdivision (b). A court may, at its discretion, and in the interest of justice, reduce any recovery under this section to reflect funds withdrawn and applied for the benefit of the claiming party.

Defendant Syed Madad's Motion for Remittitur

(30)

(d) In the case of a P.O.D. account, the P.O.D. payee has no rights to the sums on deposit during the lifetime of any party, unless there is clear and convincing evidence of a different intent.

(e) In the case of a Totten trust account, the beneficiary has no rights to the sums on deposit during the lifetime of any party, unless there is clear and convincing evidence of a different intent. If there is an irrevocable trust, the account belongs beneficially to the beneficiary.

**(f) For purposes of this section, "excess withdrawal" means the amount of a party's withdrawal that exceeds that party's net contribution on deposit in the account immediately preceding the withdrawal."**

[emphases added]

Paragraphs (a) and (b) of Cal Prob. Code § 5301 are directly relevant to the issue of who owns the funds at issue in Special Interrogatory No. 1. Absent clear and convincing evidence, Paragraph (a) provides that Hamid Abdul Patel owns the funds in that his deposit of $3,334,341,98 on November 3, 2008 constitute 100% of the net contributions in the Joint Account. Similarly, absent clear and convincing evidence, Paragraph (b) provides that Hamid Abdul Patel retains his 100% proportionate ownership interest in the "excess withdrawal" (as defined by paragraph (f)) of the funds on November 13, 2008 and November 26, 2008 by Akbar Omar from the Joint Account. Hamid Abdul Patel owned per Paragraph (a) 100% of the funds withdrawn by Akbar Omar and continues to own the funds which are the subject of Special Interrogatory No. 1 even after they were invested in TTM investment pool.

The Jury would not have been deadlocked 6 to 6 on the ownership of funds if Syed Madad's special jury instruction incorporating California Probate Code §5301 had been given to the Jury.. They would have been able to determine that none of the funds which are the subject of Special Interrogatory No. 1 were owned by Plaintiff Akbar Omar and that Plaintiff has not suffered any damages arising out of this investment. That would have reduced the total Award by $1,667,170.99 .

The Plaintiff does not have standing to pursue this claim on behalf of another individual Hamid Abdul Patel. Lack of standing may be raised at any time in the proceeding, including at trial or in an appeal. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.*(1999) 21 Cal.4th 352, 361, 87 Cal.Rptr.2d 654, 981 P.2d 499 [associational standing to seek writ of mandate under Code Civ. Proc., § 1086]; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438, 439, 261 Cal.Rptr. 574, 777 P.2d 610 [citizen standing to seek writ of mandate to compel public agency to perform its public duty]; 5 Witkin, Cal. Procedure, *supra,* Pleading, § 862, p. 320.)

Code of Civil Procedure section 367 establishes the rule that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." A real party in interest is one who has "an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action." (*Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 225.)

The "Real Party in Interest" is the person with respect to the claims asserted before the court is the person who has the right to sue under the substantive law. The "Real Party in Interest" is defined by California Rutter Guide to be "the Person who owns or holds title to the claim or property involved, as opposed to others who may be interested or benefitting by the litigation.

Because the Jury was improperly instructed, over the objections of Counsel for Defendant Syed Madad, regarding the ownership of funds held in a Joint Account, the Jury was confused and deadlocked over the issue of whether Plaintiff owned the funds and had standing to pursue a claim for the funds at issue in Special Interrogatory No. 1.

The consequence to the General Verdict is that the damages are overstated and should be reduced by ½ of the $3,334,341,98, or $1,667,170.99, in that this is the amount of damages found by the Jury which are attributed to the funds which are the subject of Special Interrogatory No. 1.

V.    **DEFENDANT MADAD IS ENTITLED TO A REMITTITUR AS TO THE MINOR ACCOUNTS NOT OWNED BY PLAINTIFF AKBAR OMAR**

Plaintiff Syed Madad seeks remittitur from the damages arising out of the minor accounts invested in the TTM pool. The evidence has shown that the wire transfers originated from the 3rd party children of Plaintiff Akbar Omar: Shazad Omar, Sameer Omar, Ayesha Omar. These are the funds which are the subject of Special Interrogatories Nos. 2, 3 and 4. Because none of these 3rd parties is a plaintiff in this case, these accounts should not be included in the damages for the General Verdict. This remittitur would reduce the Award by $123,232.53 .

Plaintiff testified that these accounts were minor accounts belonging to his children. There is no evidence in the record that Akbar Omar was a trustee over these accounts or had a contract with TTM for the benefit of these 3rd party individuals. Absent some credible evidence that a contract was made by Akbar Omar with TTM or Madad for the benefit of such 3rd party, the Originator (in each of these instances the children of Plaintiff) is the owner of the funds. Similarly, the Originator is the owner of the consequent claim against the Defendants TTM and Madad and most importantly is the Real Party in Interest with the right to sue on these claims.

Counsel for Plaintiff has asserted that California Code of Civil Procedure §369(a)(3) gives

Plaintiff the right to sue on behalf of all of these 3rd party entities.    This code section is set forth

below in its entirety:

California Code of Civil Procedure §369

> **(a) The following persons may sue without joining as parties
> the persons for whose benefit the action is prosecuted:**
>     (1) A personal representative, as defined in subdivision (a) of
> Section 58 of the Probate Code.
>     (2) A trustee of an express trust.
>     **(3)** Except for a person upon whom a power of sale has been
> conferred pursuant to a deed of trust or mortgage, **a person with
> whom, or in whose name, a contract is made for the benefit of
> another.**
>     (4) Any other person expressly authorized by statute.
>
>     (b) Notwithstanding subdivision (a), a trustee upon whom a power
> of sale has been conferred pursuant to a deed of trust or mortgage
> may sue to exercise the trustee's powers and duties pursuant to
> Chapter 2 (commencing with Section 2920) of Title 14 of Part 4 of
> Division 3 of the Civil Code.
>     [emphases added]

As an initial matter, Plaintiff bears the burden of proof on the issue of Standing.

Plaintiff has definitely not established that he is either (1) a personal representative, as defined in

subdivision (a) of Section 58 of the Probate Code or (2) A trustee of an express trust.  He has not

even tried to do so.

Nor has Plaintiff herein established the existence of a contract of any sort.  Plaintiff has

introduced no evidence of the essential elements to a contract such as an offer, acceptance,

competent parties who have the legal capacity to contract, lawful subject matter, mutuality of

Defendant Syed Madad's Motion for Remittitur

(34)

agreement, consideration, or mutuality of obligation, between Plaintiff and Defendants Madad or TTM.

There is an existential doubt regarding any possible contract, the terms of which, if it exists at all, are so vague as to be unenforceable. In addition, in that Defendants Madad and TTM were providing their services to friends and family, they did not charge any fees or receive any contractual benefits for investing Plaintiff's funds. There is no consideration for the Defendants to support even a vague contract.

Finally, there is not alleged in the remaining causes of action any contract in the name of the plaintiff, much less any contracts in the name of the Plaintiff for the benefit of another. Most relevant, despite the pre-trial assertion by Plaintiff's counsel that Plaintiff could sue as the agent of the 3rd parties pursuant to CCP 369(a)(3), in all of the evidence put up in this trial, there is none presented that a contract ever existed for the benefit of the Third Party Entities.

The test in deciding whether a contract inures to the benefit of a third person is whether an intent to so benefit the third person appears from the terms of the agreement (_Le Ballister_ v._Redwood Theatres, Inc._ (1934) 1 Cal. App.2d 447, 448-449 [36 P.2d 827]). Given that no contract has been proffered into evidence, there appear to be no terms to review. Lacking such terms the court has no ability to conclude that the intent of the contract was that it was made for the benefit of a third party.

In that Plaintiff has failed to meet his burden of proof to establish the existence of the contract and Plaintiff's authority to act for third party beneficiaries of such contract, California Code of Civil Procedure 369(a)(3) offers no standing for the Plaintiff to sue without joining the 3rd parties for whose benefit the action is prosecuted. His failure to join the 3rd parties leaves Plaintiff

without a claim as to the wire transfers of the 3rd parties. The 3rd parties must sue on their own if they seek to recover. It is common sense that Plaintiff cannot sue for money which does not belong to him.

The sparse document trail that was introduced at trial flies in the face of Plaintiff's burden of proof to establish that the Plaintiff has standing to bring a claim for money which was wired to the TTM Bank of America account by a 3rd party. The Originator remains the owner of the funds, and is the Real Party in Interest. Plaintiff does not have standing to pursue these 3rd party claims. The claims of all these adult individuals must fail in that these individuals are not plaintiffs to this action.

The consequence for the General Verdict Damages Award is that it must be reduced by the amount of funds specified in Special Interrogatories 2, 3 and 4, or the sum of $36,120.16, $35,345.19 and $51,767.18 respectively, or $123,232.53.

## VI.   SUMMARY OF REMITTITUR

Plaintiff's damages, as set forth in the General Verdict form, should be adjusted downwards:

1.) In the amount of $1,667,170.99, in that this is the amount of damages found by the Jury which are attributed to the funds which are the subject of Special Interrogatory No. 1, and

2) In the amount of funds specified in Special Interrogatories 2, 3 and 4, or the sum of $36,120.16, $35,345.19 and $51,767.18 respectively, or $123,232.53 together.

The total Remittitur should be the sum of 1) and 2) above or $1,790,403.52 and the damages awarded in the General Verdict should be $1,947,234.64 after reducing the Jury's initial award of $3,737,638.16 by such Remittitur.

**PRAYER**

Defendant Syed Madad prays that the court correct the General Verdict Damages awarded by the Jury in this case to be modified to $1,947,234.64.

Dated: May 18, 2016

Todd J. Cleary, Esq.
Attorney for Defendant
Syed Q. Madad

Defendant Syed Madad's Motion for Remittitur

(37)

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is:

10720 McCune Avenue, Los Angeles, CA  90034

On May 18, 2016, I served the foregoing documents described as **Motion for Remittitur, Memorandum of Points and Authorities; AKBAR OMAR V. SYED Q MADAD, ET AL.; Superior Court of California, Los Angeles County; Case No. : BC457773** upon the interested parties in this action addressed as follows:

> Robert J. Feldhake, Esq.
> The Feldhake Law Firm, APC
> Email: rfeldhake@far-law.com; lhiebert@farlaw.com;
> fvillalobos@far-law.com
> Attorneys for Defendant Meher F. Tabatabai

> Michael T. Rosenthal
> Enenstein & Ribakoff
> 12121 Wilshire Blvd., Suite 600
> Los Angeles, CA 90025
> Tel: (310) 899-2070
> Fax: (310) 496-1930
> mrosenthal@enensteinlaw.com

> Shazad Omar, Esq.
> APEX Lawyers, Inc.
> Email: somar@apexlawinc.com
> Co-counsel for Plaintiff, Akbar Omar

[ ] by placing [ ] the original [X] a true copy thereof enclosed in sealed   envelopes addressed as described above.

[] (By U.S. Mail) I placed in such envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

[x] (By email)  I personally sent a copy attached to an email to the recipients as described above.

[x]  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(38)

[ ] (Federal) I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

Dated: May 18, 2016

Todd J Cleary

EXHIBIT #4.27

Defendant's efforts to verify that funds deposited by
Akbar Omar in the Investment Pool, representing they
were all his funds , came from the legitimate sources.

This letter dated Jan 12, 2011 to his Attorney Arnold
Melvin Johnson, was filed as Exhibit 8, by Akbar Omar
with his 3rd Amended Complaint Case# BC 457773, Superior
Court of California on 11/05/2012.



**Technology for Telecommunication and Multimedia, Inc.**

*Your Link to the Future*

Mr. Arnold Melvin Johnson                                        January 12, 2011
1200 Wilshire Blvd., Suite 508
Los Angeles, CA 90017-1031

Dear Mr. Johnson,

This letter is written in response to your letter of December 9, 2010, which was delivered to me on December 20, 2010. As you may know, in 2009, Mr. Akbar Omar made an unsolicited deposit of funds for investment in Technology for Telecommunications and Multimedia, Inc., (TTM). At the time Mr. Omar made this deposit, he represented that the funds deposited were obtained from legitimate sources and were compliant with all federal, state, and local tax regulations. In February 2010, I was informed by the Internal Revenue Service ("IRS") that Mr. Omar became the subject of an investigation for money laundering, tax evasion, and racketeering, which is presently ongoing.

TTM has already returned a significant portion of Mr. Omar's funds after having verified through forensic accounting that the source of these funds were legitimate, as Mr. Omar represented them to be. TTM does not wish to retain Mr. Omar's funds and will return all funds and profits thereon to him. However, TTM is in the process of ensuring that it (and Mr. Omar) comply with all legal and tax reporting requirements prior to the return of the funds in question. TTM has, on numerous occasions, requested that Mr. Omar obtain an authorization from the IRS to deliver the funds to him during the investigation period. However, Mr. Omar has consistently refused. If you wish to help your client, the most expedient means of doing so would be to obtain an IRS authorization for the release of his funds. Upon receipt, we will immediately release his funds. If your client is unwilling to obtain the IRS authorization, TTM will contact the IRS and obtain the authorization directly, which may subject him to additional penalties. (*See* 26 U.S.C. § 7623, *et seq.*) (the taxpayer fraud whistleblower law).

Next, I would like to address the issue you raised regarding the status of TTM. TTM is presently an active corporation licensed by the California Secretary of State (Corporation No. C1719435).

OMAR00770



## Technology for Telecommunication and Multimedia, Inc.
### Your Link to the Future

TTM is excluded from the definition of an "investment advisor" and a "broker-dealer" because it does not solicit investors nor does it receive any compensation, commissions, or fees whatsoever from any of its investors or on any of its transactions, nor does it charge any of its investors expenses for its services. *See* 15 U.S.C. 80b-2(11) (an "investment advisor" is "a person who, *for compensation*, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities")(emphasis added). In other words, TTM's services are *free*. Therefore, TTM is not required to register with the SEC. Likewise, TTM is not an "investment company" because it does not "issue" securities to the public. *See* 15 U.S.C. § 80a-2 (definition of issuer). Accordingly, the statutes you cited are inapplicable.

Furthermore, in an effort to expedite the compliance process and the return of Mr. Omar's funds, please have your client sign and return the enclosed declaration that the source of his funds were legitimate, and that he was not the subject of an IRS investigation at the time of the deposit.

Sincerely,

Syed Q. Madad
CEO of TTM, Inc.

OMAR00771

1

2

## DECLARATION OF AKBAR OMAR

3

I, Akbar Omar, do hereby declare and state as follows:

4       1.      The facts set forth in this declaration are true of my own personal knowledge.

5    If called as a witness, I could and would competently testify in accordance with the statements made

6    herein.

7       2.      In 2009, I made an unsolicited deposit of $_____ with Techonology for

8    Telecommunications and Multimedia, Inc. ("TTM").

9       3.      At the time of this deposit, I was not the subject of an investigation by the

10   Internal Revenue Service or any other state or local tax authorities.

11      4.      The funds I deposited in TTM were acquired from legitimate sources, and all

12   applicable federal, state, and local taxes were paid on those funds prior to their deposit with TTM,

13   Inc.

14      I declare under penalty of perjury that the foregoing is true and correct, and that this

15   declaration was executed on January _____, 2011, at _____, California.

16

17                                      AKBAR OMAR

18

19

20

21

22

23

24

25

26

27

28

(43)

P.O. Box 970  Placentia, CA 92871  TEL (909) 860-0170      FAX (909) 860-0180

EXHIBIT #4.28

Defendant's effort again to verify that funds  deposited
by Akbar Omar in the Investment Pool, representing that
they were all his funds, came from the legitimate sources,
as the Defendant started hearing buzz in the Pakistani-
American Community that his clan (Memon) has their own
money network.

This letter dated Feb 28, 2011 to his Attorney Arnold
Melvin Johnson, was filed as Exhibit 9, by Akbar Omar
with his 3rd Amended Complaint Case# BC 457773, Superior
Court of California on 11/05/2012.



## Technology for Telecommunication and Multimedia, Inc.
### Your Link to the Future

Mr. Arnold Melvin Johnson,  
Attorney At Law,  
1200 Wilshire Blvd, Suite 508  
Los Angeles, CA 90017-1031

February 28, 2011

Dear Mr. Johnson:

### Subject: Return of Investment & Earnings to Akbar Omar

This letter is a follow-up to my letter dated January 12, 2011 concerning the above-referenced matter.

On December 15, 2010, TTM issued Dr. Akbar Omar three (3) checks totaling $183,730.55 (consisting of an original investment of $123,232.53 and earnings of $60,498.02). These checks were personally delivered to Mr. Omar by Faraaz Hashemi and represented the funds Mr. Omar claimed he invested with TTM on behalf of his children. However, to this date, Mr. Omar has neither cashed the checks nor has he executed the declaration we previously provided to him affirming that all of Mr. Omar's funds were obtained from a legitimate source and that all applicable federal and state taxes had been paid on those funds prior to their deposit with TTM. As we have received no response from either you or Dr. Omar or an executed declaration, we have placed a "stop payment" order on all three checks.

Once again, we request that Mr. Omar sign and return the declaration we submitted to you on January 12. For your convenience, we are re-enclosing a copy of the declaration with this letter. Upon receipt of the executed declaration, we will re-issue new checks as well as the appropriate 1099 forms for the children's funds Mr. Omar invested in TTM. Please note that the checks will be issued in the name of the depositor of funds into TTM's account.

In addition, in our January 12 letter, TTM notified you of the Internal Revenue Service's (IRS) ongoing investigation into your client for tax evasion, money laundering, racketeering, RICO violations, and fraud. As you know, your client's deposit of funds is regulated under the RICO Act of 1970 (18 U.S.C. §§ 1961-68), and the Bank Secrecy and Anti-Money Laundering Act (31 U.S.C. 5311, et seq.). TTM believes that, so long as Mr. Omar is under IRS investigation, his funds are subject to immediate forfeiture by the IRS and other state and federal authorities. Therefore, TTM believes that the United States Treasury and IRS have a vested interest in Mr. Omar's funds and that TTM has no authority to invest funds of the United States Treasury and/or the IRS.

EX9   OMAR00773



## Technology for Telecommunication and Multimedia, Inc.
### Your Link to the Future

Effective Jan 1, 2011, TTM has segregated Mr. Omar's funds from the investment pool. Mr. Omar's funds will no longer be invested by TTM, and will earn only the US Treasury interest rate or the prime rate (whichever is lower), until the date the funds are either released to the IRS or your client per the conditions outlined in our letter dated Jan 12, 2011.

Finally, please instruct your client to cease and desist from making false and defamatory statements regarding TTM (including its owners and management) in public. We believe that both parties would like to resolve this situation without resort to further legal action.

With regards,

Syed Q Madad, CEO

(46)

OMAR00774

EXHIBIT #4.29

Jury's Verdict Civil Case # BC 457773 Akbar Omar v Syed
Qaisar Madad et al, Superior Court of California,
delivered on 05/16/2016 in favor of Akbar Omar against
Syed Madad.

Please Note:

1.  Syed Madad did not attend the Jury Trial due to his
    confinement @ FCI Texarkana,Texas.

2.  Almost none of the documents filed by the Defendant
    Syed Qaisar Madad in the US District Court & the
    information submitted challenging his conviction
    since August 18, 2015, including the Motion under
    28 USC 2255 was not available to the Jury.

3.  The Plaintiff Akbar Omar used the Indictment Case#
    12-CR-01048-PA & Change of Plea to bolster his case,
    while challenge to conviction was preveted from receiving a
    fair & due process of law.

(47)

Akbar Omar vs. Syed Madad

## GENERAL VERDICT FORM – SYED MADAD

FILED
Superior Court of California
County of Los Angeles

MAY 10 2016

Sherri R. Carter, Executive Officer/Clerk

By_____ Deputy
Stephanie Barrera

Instruction
No _____

| Request by Plaintiff | Request by Defendant | Request By |
|---|---|---|
| Given as Proposed | Given as Modified | Given on Court's Motion |
| Refused | | |
| Withdrawn | | |
| | | Judge |

Instruction
No _____

For each claim, select one of the two options by checking the box. AKBAR OMAR's claim as against Defendant SYED QAISER MADAD:

1.    On Plaintiff AKBAR OMAR's claim for fraud (intentional misrepresentation):

☑    we find in favor of Plaintiff AKBAR OMAR and against Defendant SYED QAISER MADAD.

____    we find in favor of Defendant SYED QAISER MADAD and against Plaintiff AKBAR OMAR.

2.    On Plaintiff AKBAR OMAR's claim for breach of fiduciary duty:

☑    we find in favor of Plaintiff AKBAR OMAR and against Defendant SYED QAISER MADAD.

____    we find in favor of Defendant SYED QAISER MADAD and against Plaintiff AKBAR OMAR.

Complete the section below only if you find in favor of Plaintiff AKBAR OMAR on at least one of his claims above:

(1)    Do you find that Akbar Omar has met his burden of proof to establish that he is the sole owner of, and has title to, the funds in the amount of $3,334,341.98 wired on November 13 and 26, 2008?

☑ Yes    ____ No

(2)    Do you find that Akbar Omar has met his burden of proof to establish a contract in his name for the benefit of Shazad Omar, a third party, regarding the funds in the amount of $36,120.16 wired on December 10, 2008 and February 13, 2009?

☑ Yes    ____ No

(48)

## GENERAL VERDICT FORM – SYED MADAD

Instruction
No _____

| Request by Plaintiff | Request by Defendant | Request By | |
|---|---|---|---|
| Given as Proposed | Given as Modified | Given on Court's Motion | |
| Refused | | | |
| Withdrawn | | | |
| | | | Judge |

Instruction
No _____

(3)     Do you find that Akbar Omar has met his burden of proof to establish a contract in his name for the benefit of Sameer Omar, a third party, regarding the funds in the amount of $35,345.19 wired on December 10, 2008 and February 13, 2009?

    ✓ Yes          ___ No

(4)     Do you find that Akbar Omar has met his burden of proof to establish a contract in his name for the benefit of Ayesha Omar, a third party, regarding the funds in the amount of $51,767.18 wired on December 10, 2008 and February 13, 2009?

    ✓ Yes          ___ No

(5)     Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $273,404.73 wired on December 10, 2008?

    ___ Yes          ✓ No

(6)     Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $653,985.00 wired on December 10, 2008?

    ___ Yes          ✓ No

(7)     Do you find that Akbar Omar has met his burden of proof to establish that he is the sole owner of, and has title to, the funds in the amount of $449,077.00 wired on December 11, 2008?

    ✓ Yes          ___ No

(49)

## GENERAL VERDICT FORM -- SYED MADAD

Instruction
No _____

| Request by Plaintiff | Request by Defendant | Request By | |
|---|---|---|---|
| Given as Proposed | Given as Modified | Given on Court's Motion | |
| Refused | | | |
| Withdrawn | | _____ | |
| | | | Judge |

Instruction
No _____

(8)    Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $1,250,000.00 wired on December 11, 2008?

✓ Yes          ___ No


(9)    Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the investment in the amount of $398,612.49 invested on January 22, 2009?

___ Yes          ✓ No


(10)    Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the investment in the amount of $123,000.00 invested on January 22, 2009?

___ Yes          ✓ No


(11)    Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $71,000.00 wired on February 11, 2009?

___ Yes          ✓ No


(12)    Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $170,000.00 wired on February 11, 2009?

___ Yes          ✓ No

## GENERAL VERDICT FORM – SYED MADAD

Instruction
No _____

| Request by Plaintiff | Request by Defendant | Request By | |
|---|---|---|---|
| Given as Proposed | Given as Modified | Given on Court's Motion | |
| Refused | | | |
| Withdrawn | | _____ | |
| | | | Judge |

Instruction
No _____

(13)   Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $110,618.27 wired on February 12, 2009?

___ Yes        ✓ No

(14)   Do you find that Akbar Omar has met his burden of proof to establish that he is the sole owner of, and has title to, the funds in the amount of $493,000.00 wired on March 5, 2009?

✓ Yes        ___ No

(15)   Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $110,000.00 wired on March 6, 2009?

___ Yes        ✓ No

(16)   Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the investment in the amount of $400,000.00 investment on March 30, 2009?

✓ Yes        ___ No

(17)   Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $140,000.00 wired on April 28, 2009?

___ Yes        ✓ No

## GENERAL VERDICT FORM – SYED MADAD

Instruction
No _____

| Request by Plaintiff | | Request by Defendant | | Request By | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | | Judge |

Instruction
No _____

(18) Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $170,000.00 wired on April 28, 2009?

___ Yes        ✓ No

(19) Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $173,000.00 wired on April 28, 2009?

✓ Yes        ___ No

(20) Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $300,000.00 wired on April 29, 2009?

✓ Yes        ___ No

(21) Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the funds in the amount of $153,157.64 wired on ~~October 11,~~ December 14, 2009?

✓ Yes        ___ No

(22) Do you find that Akbar Omar has met his burden of proof to establish a contract in his name for the benefit of Ahmed Carrim, a third party, regarding the funds in the amount of $545,000.00 wired on November 24, 2009?

___ Yes        ✓ No

(52)

## GENERAL VERDICT FORM – SYED MADAD

Instruction
No _____

| Request by Plaintiff | | Request by Defendant | | Request By | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | | Judge |

Instruction
No _____

(23)   Do you find that Akbar Omar has met his burden of proof to establish that he is the owner of, and has title to, the cash in the amount of $1,184,000.00?

✓ Yes          ___ No

After any applicable offset for funds already returned to Plaintiff AKBAR OMAR, we award AKBAR OMAR the following damages: $ 3,737,638.16

Signed: _____
                    Presiding Juror

Date: _____05/16/16_____

After all verdict forms have been signed and dated, notify the Court Clerk that you are ready to present your verdict in the courtroom.

(53)

EXHIBIT #4.30

Jury's Verdict Civil Case # BC 457773 Akbar Omar v Syed
Qaisar Madad et al, Superior Court of California,
delivered on 05/16/2016 in favor of Defendant Meher F.
Tabatabai against the Plaintiff Akbar Omar on all Counts.

Akbar Omar vs. Syed Madad

## GENERAL VERDICT FORM -- MEHER TABATABAI

FILED
Superior Court of California
County of Los Angeles

MAY 16 2016

Sherri R. Carter, Executive Officer/Clerk

By Stephanie Barrera, Deputy

Instruction
No _____

| Request by Plaintiff | Request by Defendant | Request By By |
|---|---|---|
| Given as Proposed | Given as Modified | Given on Court's Motion |
| Refused | | |
| Withdrawn | | |
| | | Judge |

Instruction
No _____

For each claim, select one of the two options by checking the box. AKBAR OMAR's claim as against Defendant MEHER F. TABATABAI:

1.    On Plaintiff AKBAR OMAR's claim for fraud (intentional misrepresentation):

_____ we find in favor of Plaintiff AKBAR OMAR and against Defendant MEHER F. TABATABAI.

✓ we find in favor of Defendant MEHER F. TABATABAI and against Plaintiff AKBAR OMAR.

2.    On Plaintiff AKBAR OMAR's claim for negligent misrepresentation:

_____ we find in favor of Plaintiff AKBAR OMAR and against Defendant MEHER F. TABATABAI.

✓ we find in favor of Defendant MEHER F. TABATABAI and against Plaintiff AKBAR OMAR.

Answer questions 3 and 4 below only if you find in favor of Plaintiff AKBAR OMAR and against Defendant SYED MADAD on the fraud or breach of fiduciary duty claims.

3.    Answer this question only if you find that Defendant SYED MADAD committed fraud against Plaintiff AKBAR OMAR. Do you find that Defendant MEHER F. TABATABAI aided and abetted the fraud committed by Defendant SYED MADAD:

_____ Yes

✓ No

*General verdict (Meher)*
*5/16/16*
*46320233 3*

(55)

## GENERAL VERDICT FORM – MEHER TABATABAI

Instruction
No _____

| Request by Plaintiff | Request by Defendant | Request By | |
|---|---|---|---|
| Given as Proposed | Given as Modified | Given on Court's Motion | |
| Refused | | | |
| Withdrawn | | | |
| | | | Judge |

Instruction
No _____

    4.    Answer this question only if you find that Defendant SYED MADAD breached his fiduciary duty to Plaintiff AKBAR OMAR. Do you find that Defendant MEHER F. TABATABAI aided and abetted the breach of fiduciary duty by Defendant SYED MADAD:

    _____    Yes

    __✓__    No

    5.    Answer question 5. As to Plaintiff AKBAR OMAR's claim that Defendant MEHER F. TABATABAI is the alter ego of Defendant TECHNOLOGY FOR TELECOMMUNICATION AND MULTIMEDIA, INC., also known as TTM. Do you find that Defendant MEHER F. TABATABAI was the alter ego of TTM:

    _____    Yes

    __✓__    No

If you find that Defendant MEHER F. TABATABAI committed fraud (intentional misrepresentation), or negligent misrepresentation, or aided and abetted SYED MADAD in the commission of fraud (a "yes" answer to question 3) or aided and abetted SYED MADAD in the breach of fiduciary duty (a "yes" answer to question 4), please answer question 6:

    6.    We award Plaintiff AKBAR OMAR the following damages: $ __0__

Signed: _____
                  Presiding Juror

Date: __5/16/16__

After all verdict forms have been signed and dated, notify the Court Clerk that you are ready to present your verdict in the courtroom.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SYED QAISAR MADAD )  Case No: 2:16-CV-02519-PA
 )       12-CR-01048-PA
 )
    Petitioner/Defendant )
 )
 V )  (PROPOSED) ORDER #1 FOR ELECTRONIC
 )  RECORDS FROM CHARLES SCHWAB  &  Co.
 )
UNITED STATES OF AMERICA )
 )
 )
    Respondent/Plaintiff )
 )
 )
 )

The Electronic Record being a material Physical Evidence, the
Government is hereby ordered to procure a copy of the TYPICAL DISPLAY SCREEN
FORMAT on a Compact Disc (CD), used for trading the TTM's Charles Schwab
Account # 2152-4959 by Trader SYED QAISAR MADAD ( The Defendant ) on Street
SmartPro Trading Software for the Investment Pool from December 7, 2007 --
March 31, 2011, alongwith a copy of their Operating Manual for the Users of
this Software Program. In addition to submission to this Court, the Government
will furnish a printed copy of the Electronic Record to the Defendant.

APPROVED

_____                    _____
DATE                               HONORABLE PERCY ANDERSON
                                   UNITED STATES DISTRICT JUDGE

DENIED

_____                    _____
DATE                               HONORABLE PERCY ANDERSON
                                   UNITED STATES DISTRICT JUDGE

(57) -1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

---

SYED QAISAR MADAD

   Petitioner/Defendant

    V

UNITED STATES OF AMERICA

   Respondent/Plaintiff

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 2:16-CV-02519-PA
    12-CR-01048-PA

(PROPOSED) ORDER #2 FOR ELECTRONIC
RECORDS FROM CHARLES SCHWAB & Co.

---

 The Electronic Record being a material Physical Evidence, the Government is hereby ordered to procure a copy of the TYPICAL DISPLAY SCREEN FORMAT on a Compact Disc (CD), used for Trading the TTM's CyberTrader Account # 1969-0742 by Trader SYED QAISAR MADAD ( The Defendant ) on CyberTrader Pro Trading Software for the Investment Pool from November 19, 2005 – December 7, 2007, alongwith a copy of their Operating Manual for the Users of this Software Program. In addition to submission to this Court, the Government will furnish a printed copy of the Electronic Record to the Defendant.

       APPROVED

_____  _____
DATE          HONORABLE PERCY ANDERSON
            UNITED STATES DISTRICT JUDGE

       DENIED

_____  _____
DATE          HONORABLE PERCY ANDERSON
            UNITED STATES DISTRICT JUDGE

         (57) –2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYED QAISAR MADAD | ) Case No: 2:16-CV-02519-PA |
| | )             12-CR-01048-PA |
| Petitioner/Defendant | ) |
| V | ) (PROPOSED) ORDER #3 FOR PHOTOGRAPHS |
| | ) OF THE CRIME SCENE FROM THE LAW |
| | ) OFFICE OF MARK J. WERKSMAN |
| UNITED STATES OF AMERICA | ) |
| Respondent/Plaintiff | ) |

The Photographs of the Office/ Library/ Trading Room of the Investment Pool, located at the old residence of the Defendant at 2452 ALAMO HEIGHTS DRIVE, DIAMOND BAR, CA 91765, being a material Physical Evidence of the Crime Scene, the Government is hereby ordered to procure all photographs from Attorney Mark Werksman, Law Offices of Mark J. Werksman, 888 West Sixth Street, 4th Floor, Los Angeles, CA 90017 , taken by him personally between January & February, 2013. In addition to submission to this Court, the Government will furnish printed copies of the photographs to the Defendant.

APPROVED

_____          _____
DATE                                          HONORABLE PERCY ANDERSON
                                                   UNITED STATES DISTRICT JUDGE

DENIED

_____          _____
DATE                                          HONORABLE PERCY ANDERSON
                                                   UNITED STATES DISTRICT JUDGE

(58)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SYED QAISAR MADAD                          )     Case No: 2:16-CV-02519-PA
                                           )               12-CR-01048-PA
                                           )
        Petitioner/Defendant               )
                                           )
        V                                  )     (PROPOSED) ORDER #4 FOR THE
                                           )     ACQUISITION OF ANCIENT
                                           )     BANKRUPTCY COURT RECORDS
UNITED STATES OF AMERICA                   )     OF CONSPIRATOR AKBAR OMAR
                                           )
                                           )
        Respondent/Plaintiff               )
                                           )
                                           )
                                           )

        The Ancient US Bankruptcy Court Records of Akbar Omar, being a
good Character Reference, indicator of his Business Ethics, Practices & the
same Behavior Pattern continuing & ongoing despite a long period of time,
makes these Ancient Records relevant & substantive. The Government is hereby
ordered to procure records of all three (3) Bankruptcies from the National
Archives & Records Administration (NARA) on a Compact Disc & submit to this
Court. The records location information has been provided by the Defendant
with his Motion under 28 USC 2255 in VOLUME 4, EXHIBIT # 4.15. It is further
decreed that ||hese Ancient Records will become part of the Case# 2:16-CV-
02519-PA .

                                 APPROVED


_____              _____
DATE                             HONORABLE PERCY ANDERSON
                                 UNITED STATES DISTRICT JUDGE


                                 DENIED


_____              _____
DATE                             HONORABLE PERCY ANDERSON
                                 UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYED QAISAR MADAD )<br><br>)<br><br>)<br>Petitioner/Defendant )<br><br>)<br>V )<br><br>)<br><br>)<br>UNITED STATES OF AMERICA )<br><br>)<br><br>)<br>Respondent/Plaintiff )<br><br>)<br><br>)<br><br>) | Case No: 2:16-CV-02519-PA<br>12-CR-01048-PA<br><br>(PROPOSED) ORDER #5 FOR THE<br>PROCESS SERVICE OF THE COMPLAINT<br>ON ALL DEFENDANTS BY THE US MARSHAL<br>SERVICE (USMS) |

The Petitioner/Defendant, SYED QAISAR MADAD who is the Plaintiff
in this new case being filed in the US District Court, is under confinement
at the FCI Texarkana, Texas, is unable to serve the Complaint on the 23
Conspirators who have harmed him & his family, and 35 other Investors — the
" The Real Victims" & in dire financial situation. He prays the Court for
assistance & requests that US Marshal Service (USMS) be ordered to carry out
the process service.

APPROVED

DATE _____

HONORABLE PERCY ANDERSON
UNITED STATES DISTRICT JUDGE

DENIED

DATE _____

HONORABLE PERCY ANDERSON
UNITED STATES DISTRICT JUDGE

(60)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SYED QAISAR MADAD | ) | Case No: 2:16-CV-02519-PA |
| | ) | 12-CR-01048-PA |
| | ) | |
| Petitioner/Defendant | ) | |
| | ) | |
| V | ) | MOTION TO ACQUIRE THE TRANSCRIPT |
| | ) | OF THE CIVIL TRIAL PROCEDDINGS, |
| | ) | THE JURY VERDICT, AND ALL RECORDS |
| UNITED STATES OF AMERICA | ) | OF THE CIVIL CASE# BC 457773 AKBAR |
| | ) | OMAR v SYED QAISAR MADAD et al, |
| | ) | AND BE MADE PART OF THE CASE NO: |
| Respondent/Plaintiff | ) | 2:16-CV-02519-PA. |
| | ) | |
| | ) | |

The Petitioner/Defendant, SYED QAISAR MADAD moves this Motion before the Court, that the Civil Case # 457773 Akbar Omar v Syed Qaisar Madad et al, filed in the Superior Court of Los Angeles, CA on March 22, 2011, being the predecessor & the case that spawned the Criminal Case # 12-CR-01048-PA, the Transcript of the Civil Trial which concluded on May 16, 2016, the Jury Verdict, the judge's ruling of May 19, 2016, all Depositions, Exhibits etc, any & all records of this Civil Case, be made part of the US District Court Case No: 2:16-CV-02519-PA & an order be issued to the Government to acquire all of the records & submit to this Court.

MOTION GRANTED, AS PROPOSED

---------------------------
DATE

-----------------------------------
HONORABLE PERCY ANDERSON
UNITED STATES DISTRICT JUDGE

Motion Denied. The Petitioner/Defendant to file an Amended Motion , as decreed by the Court.

---------------------------
DATE

-----------------------------------
HONORABLE PERCY ANDERSON
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SYED QAISAR MADAD ) Case No: 2:16-CV-02519-PA
) 12-CR-01048-PA
)
Petitioner/Defendant )
)
V )   MOTION 1) TO ENTER CIVIL CASE
)   JURY'S VERDICT INTO THE US
UNITED STATES OF AMERICA )   DISTRICT COURT CASE FILES.
)
)   MOTION 2) TO ADJUST THE
Respondent/Plaintiff )   RESTITUTION AWARD TO AKBAR OMAR
)   DOWNWARDS
)
)
)

The Petitioner/Defendant, SYED QAISAR MADAD moves these Motions
before the Court, as follows:

MOTION 1

It is hereby decreed that the Jury Verdict in the Civil Case #
BC 457773 Akbar Omar v Syed Qaisar Madad et al, Superior Court
of California, entered on the General Verdict Forms , for SYED
MADAD & MEHER TABATABAI, and signed by the Presiding Juror on
05/16/16 will be entered & recorded in the Case Nos: 2:16-CV-
02519-PA and 12-CR-01048-PA, as rendered by the Jury.

MOTION GRANTED, AS PROPOSED

DATE                    HONORABLE PERCY ANDERSON
                        UNITED STATES DISTRICT JUDGE

MOTION DENIED

DATE                    HONORABLE PERCY ANDERSON
                        UNITED STATES DISTRICT JUDGE

(62)-1

MOTION 2

It is hereby decreed that the Jury Verdict in the Civil Case # BC 457773 Akbar Omar v Syed Qaisar Madad et al, Superior Court of California, entered on the General Verdict Form against SYED MADAD & in favor of AKBAR OMAR awarding damages in the amount of $ 3,737,638.16 , and signed by the Presiding Juror on 05/16/16 will be entered & recorded in the Case Nos: 2:16-CV- 02519-PA and 12-CR-01048-PA, as rendered by the Jury. The Restitution awarded to AKBAR OMAR on 09/09/2013 in the US District Court Hearing will be adjusted downward by $ 5,387,797.74 , or as verified by a recaluculation.

MOTION GRANTED, AS PROPOSED

DATE _____          _____
                                  HONORABLE PERCY ANDERSON
                                  UNITED STATES DISTRICT JUDGE

MOTION DENIED

DATE _____          _____
                                  HONORABLE PERCY ANDERSON
                                  UNITED STATES DISTRICT JUDGE

SYED QAISAR MADAD
Reg.No & Qtrs: 63886-112, F03 203L
Federal Correctional Institution,
P.O.BOX  7000
Texarkana, TX 75505-7000

7007 0710 0001 6164 1533

CLERK, U.S. DISTRICT COURT
JUN 23 2016
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY



MAIL ROOM
FCI-TEXARKANA, TEXAS 75505-9500

_____
Date

The enclosed letter was processed through special mail procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

PA

UNITED STATES DISTRICT COURT,
WESTERN DIVISION,
CENTRAL DISTRICT OF CALIFORNIA,
Office of The Clerk,
US Courthouse, Room G8
312 N. Spring Street,
Los Angeles, CA 90012

